### ARNETT & BROWN vs. DODSON.

To authorise a complainant to examine one of several defendants in chancery, if an answer has been filed by him and a replication filed, the replication must be withdrawn, and an affidavit of the want of interest of such party made.

E. L. EDWARDS, *for Appellants.*

YOUNG, HICKMAN & WELLS, *for Appellees.*

SCOTT, J., *delivered the opinion of the Court.*

This was a bill in chancery filed by Dodson the appellee, against Arnett & Brown the appellants, and Jas. G. Cook and Timothy Whitehead. The bill in substance states, that Arnett and Brown contracted with Joel Crittenden, U. States agent for the Osage Indians, to build by the first of July, 1845, for the Chiefs and head men of that tribe, twenty-one houses, on a plan agreed upon, for the sum of $2100. That on the 17th Feb. of the same year, the said James G. Cook and Timothy Whitehead contracted with Arnett and Brown, to build 8 of the 21 houses for $600, upon the plan and by the time agreed upon between Arnett & Brown and

the agent. That it was agreed between A. & B. and C. & W. that they A. & B. would give to C. & W. after the completion of the houses, an order on the agent for the sum of $600, the price of the work agreed to be done. That A. & B. falsely represented to C. & W. that plank and lumber could be conveniently obtained at the place of erecting the said buildings. That in consequence of the difficulty in procuring materials, the houses were not completed at the stipulated time; nor were those to be built by A. & B. That although the contract was forfeited, yet time was given by the agent to A. & B. to finish the houses, who extended the same to C. & W. That about the 21st of April, 1845, Cook & W. contracted with the agent to perform additional work on the houses they had undertaken to build, at and for the sum of $330, to be paid when the houses were finished. That the complainant furnished C. & W. with provisions and other things necessary for carrying on said work, to the amount of $90. That on the 15th July, the complainant going out to C. & W. about said sum of money, and finding that he could not get it, expressed his fears to A. & B. about its ever being paid, they proposed to him to go and make arrangements with C. & W. to assist them in doing the work, and to procure from them an assignment of the contract, and that they, A. & B. would then pay him the sum of money C. & W. were to receive from them under the contract. That on the 19th July, in consideration of their indebtedness to him, and also in consideration that he would assist them in the performance of their undertaking, C. & W. assigned to him both of their contracts, as well that with A. & B. as that with the agent. That in conjunction with C. & W. he immediately commenced work and was rapidly progressing, when the first of December, A. & B. fraudulently combining to defraud him, and C. & W. inform the agent that they had, or were about to abandon their work, and would never complete it. That the agent confiding in said misrepresentations, employed the said A. & B. to complete the said houses, who on the 4th December took forcible possession of their tools, and would not let them proceed with their work, but completed it themselves. That the greater part of the work had been done, and it would have been completed in as little time, as it was done by A. & B. had there been no interference by them. That $200 would have completed the houses when A. & B. commenced the work. That in addition to the sum of $90 above mentioned, he has spent in provisions, &c., $303, none of which has been repaid him. That the amount expended by him for the hire of hands was $547, of which sum $540 47 have been paid by him, and he is liable for the balance, C. & W. being insolvent. That A. & B. have

received the sum stipulated for building the houses. That they refused to give the order on the agent for the $600; and have only paid to the complainant the sum of $57 50, and nothing at all to C. & W. The prayer of the bill is, that A. & B. may be compelled to pay the complainant as well the sum of $600, as the sum of $330 which was agreed to be paid for the additional work which was to be done.

The answer of Brown one of the defendants admits the agreements stated in the bill relative to the business, by the agent, and the several parties. It denies that there was any verbal agreement respecting an order to be drawn on the agent for six hundred dollars. It denies that any representation was made concerning the facility with which plank and lumber might be procured at the place where the houses were to be built. It states that C. & W. made no exertions to perform their contract with him and Arnett, and on the 21st April, 1845, made an entirely different contract with the agent, respecting the eight houses which they were to build. That this last contract requiring much more labor than the first, they were opposed to C. & W. undertaking it. That although the houses undertaken by him and Arnett were not completed on the day agreed upon, yet they were finished in the month of July. All fraud is fully denied. It is denied that the agent employed him and Arnett to complete the work undertaken by C. & W., and afterwards by the complainant; that the agent having by the contract of the 21st of April, with C. & W. reserved to himself the right to employ others in the event of their failure to do the work within the time stipulated, and C. & W. having totally failed to comply with their engagement, and the agent about the 15th October contracted with him, Brown, alone, to finish the contract of C. & W., he being allowed a reasonable price for his services and materials. That about the 1st of December, he and complainant had some difficulty about the work, the complainant still working after he had undertaken the contract. That they went to the agent about the matter, when the complainant was directed by the agent to desist from the work, as he had employed him, Brown to complete it, as he was, by his contract with C. & W. authorised to do. That the agent told complainant that Brown should have a reasonable compensation for his services, and the balance of the $930 should be paid to him. That the complainant consented to the arrangement, and wrote a letter to his hands, which was delivered, directing them to cease work on his account. That Arnett was no party to the contract the respondent made with the agent, that he was at home, and it was not until he had undertaken the work, that Arnett was employed by him to assist therein.—

That no more work was done or charged for by him, than was undertaken by C. & W. by their contract with the agent of the 21st April.— That the work specified in that contract to be done was worth $1500, and that when he commenced on the buildings they were not more than half finished. Respondent denies that he and Arnett took forcible possession of complainant's tools. That respondent does not believe that the work would have been finished by complainant in a reasonable time. That C. & W. had sometime before he was employed, abandoned the work altogether. That after he had finished the work, he made out his account for the same, that the agent, complainant and he, met together, and settled the same, that when any item of the account was disputed, it was by the agent referred to arbitrators, and their award as to the propriety and reasonableness of the charge adopted in the settlement.— That upon an adjustment thus made, there remained to the complainant, of the sum of $930, a balance of $147, $85 of which was retained by the agent for depredations of the complainant's servants, on the Indians, and the rest paid over to him.

Arnett's answer, so far as it goes, does not vary from that of Brown's. Cook also filed an answer, which it is not material to notice. To these several answers, replications were filed. Most of the allegations of Brown's answer, relative to the conduct of the agent in this transaction, were supported by his deposition, which was taken in the cause. The evidence of the witnesses in no material matter contradicted the answer, except so far as to their opinion of the sum necessary to complete the houses, and as to the time at which the work was begun by C. & W. Cook, one of the defendants, was made a witness by the complainant, who testified as follows:—"About the 18th day of July, 1845, I and Timothy Whitehead transferred the bonds that we held, the one on Arnett & Brown, for six hundred dollars, and the other on the United States given by agent to Dodson. Dodson and Arnett had conversation together the same evening, and Brown and Dodson conversed together next morning. Brown told me that Dodson wanted to see what I and Whitehead owed him, Dodson, and said if we would transfer the bonds to Dodson, he, Dodson, was willing to go on and finish the work. I told Dodson and Brown, that there was money coming out of the six hundred dollar bond for glass, &c., about eighty dollars to Arnett & Brown, and that there was something coming for the hands; Dodson said he could settle what was coming to the hands, with them, the hands. There was a three hundred and thirty dollar bond given by the agent as above mentioned, and I also transferred that to Dodson. Brown then told Dodson to go on

with the work, and he should have his money; we then came in to Van
Buren county.   Dodson then wanted me to go out and work for him.   I
started about the 21st August, but was taken sick—many of the hands
were taken sick.   I started the second time and was again taken sick.
Arnett wanted me to go out after they got the contract from Dodson.—
The agent said he taken the contract from Dodson and given it to Brown.
Arnett told me he was a partner with Brown.   I told Arnett that per-
haps Brown would not let him, Arnett, into the contract which had been
taken from Dodson.   Arnett replied that Brown would be glad to see
him, Arnett, coming with hands and provisions.   While Arnett and I
were going out to the work, Arnett told me that Brown came to him, be-
fore the contract had been taken from Dodson by the agent, and said
"Let us go and throw Dodson out of the ring, and finish the work and
draw the money."   Arnett said he told Brown that he did not want to
have any thing to do with it while Dodson was at work, but when Dod-
son was out, then he, Arnett, was in.   Well, said Brown, will you stand
up to me, if I throw Dodson out?—and Arnett said he told him yes,
Brown I always have stood up to you, and I will do it again.   Brown
then said he would go out and throw him, Dodson, out.   Arnett alsa told
me in some conversation, that he had written out a letter to his son Wes-
ley Arnett, which letter was carried out by Brown before the work was
taken from Dodson, in which letter Arnett said to witness, he had stated
to his son to hold on' a little longer with the work, that we have the
hatchet in our own hands, and we intend to use it, and he would be on
with some hands and provisions.   After Dodson got the work, the agent
said he would give 'till the 1st of October to finish, and afterwards I told
the agent we could not get the work done then, and he said, that so the
work was going on it was all he wanted.   The agent said you can get it
done by the first of December, and all the Indians want is to have it go
on.   Before we took the contract for the additional work, I went to Ar-
nett about it, and Arnett said he had no objection, but to go on.   I went
to the agency with Arnett, and told him that if he had any objection to
my going into the contract of the 21st of April, I would drop it, Arnett
said no,—go on: I will give as much time as the agent will.   This was
not to affect the contract with Brown & Arnett, and when I afterwards
told Arnett that I could not get the work done in time, Arnett replied
that he would give as much time as the agent would.   The consideration
of the assignment of the bonds, was the debt, Whitehead and I were ow-
ing Dodson.   Dodson at the time said bonds were assigned to him, said
that he would pay for what work I had done or might do, he also said it

would be profitable and to to go ahead with the work, and he would give me money to enter a quarter section of land. I am not liable to Dodson on the amount of said bonds, and I have no interest in the event of this suit. Brown advised me to assign the bonds to Dodson, but Arnett never said anything to me about it. Witness met Arnett & Brown on the return from the agency after they had got the money for the work done, and he asked the which got the money, to which they replied laughingly, that Dodson had got all the money.

There was a difference of opinion among the witnesses, as to the amount of money necessary to complete the houses when Brown took the contract. One thought $150, and another $275 would be sufficient. It appeared that the anxiety of Brown & Arnett to have the work completed, proceeded from the fact that they could not get the money for the houses they had built, until the eight undertaken by C. & W. were completed.

The bill was dismissed as to C. & W., and a decree for six hundred dollars was entered against Arnett & Brown, from which they appealed.

As to the testimony of Cook, it may be observed that proper course to have been pursued in order to have obtained it, was to have withdrawn the replication to his answer, and have made a motion for his examination founded on an affidavit of his want of interest. He would then have been examined, subject to all just exceptions. The rule at law is rigid that a plaintiff cannot examine a defendant, but in equity this is relaxed, and in the mode just stated a plaintiff in chancery may have the benefit of the testimony of a defendant. Greenleaf, sec. 361. We do not see that Cook had any interest in this suit, but if he had, no objection was made to his examination in the court below.

We see nothing in the testimony of Cook to affect the determination of this cause. His evidence shows some anxiety on the part of A. & B. to have the contract of C. & W. completed, but considered in connexion with the fact that A. & B. could not obtain payment for the houses which they had built and which had been completed for a considerable time, until those undertaken by C. & W. were finished, it is not at all surprising. The houses, or a portion of them had been built by subcontractors and the inconvenience of a deferred payment it is obvious must have been great.

After an attentive consideration of this case and the agreements of the solicitors in support of the decree, we cannot perceive any principle on which it can be sustained. We do not see on what ground the complainant is entitled to relief against the defendants A. & B. either in law or

equity. The agent is the source of all the hardship and oppression in this transaction, and if he has injured the complainant, that is no reason why he should be redressed at the cost of the defendants. If Brown did urge the agent to take the contract from the complainant, that does not shift the responsibility from the agent on him. The agent had a right by the contract to employ another to do the work; whether that right was reasonably exercised or not, is a question not to be discussed in this cause and between these parties. If the complainant has been injured by the conduct of the agent, let him sue him. After the agent had interfered in the contract between A. & B. and C. & W. by stipulating for additional and more expensive work from the latter party without the consent of the former, we do not see the justice of his withholding payment from A. & B. for their work, until the contract for the additional work was completed. But for this act on his part it appears that this controversy would never have arisen.

But what is conclusive, as it seems in this case, is, that the complainant, though at first he was unwilling that Brown should take the contract, yet, finally yielded his opposition. Brown's services were to be performed on a *quantum meruit.* He was present at the settlement of Brown's account. Charges objected to by him, were arbitrated; the judgment of the arbitrators was adopted in all matters of dispute. This bill does not seek to impeach or set aside this settlement, it is not to surcharge and falsify Brown's account, but on some vague and undefined idea seeks redress from those who it appears have not injured him.

The other Judges concurring, the decree will be reversed.