WILLIAM RISLEY, Respondent, *v.* THE CITY OF ST. LOUIS *et al.*, Appellants.

*Municipal Corporations—Assessments for Improvements—Powers, compliance with—Special Tax.*—In a proceeding by a municipal corporation, under its charter and ordinances, to levy a special tax or collect an assessment upon a lot owner to pay for the opening or improving of an adjoining street, it is not necessary for the corporation to show a strict compliance with all the ordinances directory upon the subject; but the owner of a lot assessed may show any neglect of duty which has worked an injury to himself. (City of St. Joseph v. Anthony, 30 Mo. 537, P. 2, affirmed.)

*City of St. Louis—Charter—Proceedings to assess Special Tax.*—1. The charter of the city of St. Louis, approved March 14, 1859, repealing the act of incorporation of February 23, 1853, does not affect proceedings commenced under the prior charter of 1853, to assess a special tax upon lot owners to pay for the improvement of an adjoining street. 2. The act of February 23, 1853, requires notice by publication of the proceedings for assessing such special tax to be given only to the persons to be benefitted by the contemplated improvement. 3. It is not necessary that the different adjournments of the jury, empannelled to assess the damages and benefits for the contemplated improvements, should appear of record. 4. The fact that there was no money in the city treasury to meet the appropriation made by the city council to pay the amount assessed against the city, cannot avail a lot owner against whom the special tax is assessed.

*Appeal from St. Louis Land Court.*

The plaintiff filed his petition as follows : The plaintiff in the above entitled cause states, that he is the owner and he

is now in possession of the following described real estate, situate in the city and county of St. Louis, to-wit: A lot of ground, one hundred and forty feet on Risley street by eighty-five feet in depth, bounded north by Lombard street, east by self et al., south by Vorester, and west by Risley, in the city and county of St. Louis, State of Missouri, in block number forty-four; also a lot of ground, one hundred and sixty-three feet nine inches on Front street by one hundred and thirty-one feet six inches in depth, bounded north by Lombard street, east by Front street, south by Schoenthaler, and west by Commercial street, in the city and county of St. Louis, State of Missouri, in block number eight hundred and fifty-six; also a lot of ground, one hundred and thirty-seven feet four inches on Front street by one hundred and forty feet in depth, bounded north by Lombard street, east by Commercial street, south by Wade, and west by First street, in the city and county of St. Louis, State of Missouri, in block number eight hundred and fifty-six; and also a lot of ground, seventy-six feet four inches on First street by one hundred and eight feet in depth, bounded north by Lombard street, east by First street, south by Welmer, and west by self, in the city and county of St. Louis, State of Missouri, in block number forty-four.

The plaintiff further states, that on or about the seventh day of April, in the year eighteen hundred and fifty-eight, the mayor of the City of St. Louis, acting under the authority and by the direction of said city, rendered and entered up four several judgments against this plaintiff, for the sum of —— dollars for damages, and also for costs, as is stated in said judgments, which judgments for damages and costs aforesaid the said city caused to be entered of record in the office of the register of the City of St. Louis aforesaid, a copy of which judgments is filed herewith, marked exhibit A.

The plaintiff further states, that afterwards, and on or about the 29th day of July, in the year eighteen hundred and fifty-nine, the said city caused an execution to be issued

on said judgment, describing therein the above-mentioned real estate, and caused said execution to be delivered to the defendant, Daniel A. Rawlings, who was then and is now acting as marshal of the City of St. Louis, and directed said marshal to levy said execution upon said real estate, and to expose the same to public sale under said judgment and execution, a copy of which execution is filed herewith and marked exhibit B.

The plaintiff further states, that the said marshal, after said execution was delivered to him as aforesaid, and in pursuance of the said instructions of the said city, actually levied said execution upon said real estate, and said marshal has advertised said real estate in the Missouri Democrat and in the Anzeiger des Westens, two public newspapers, printed and published in said city; and said marshal threatens that he will, as stated in said advertisement, expose said real estate for sale, at public vendue or outcry, at the court-house, in the city of St. Louis and county of St. Louis, on the —— day of September, 1859, to the highest and best bidder, for cash, a copy of which advertisement is filed herewith, marked exhibit C.

The plaintiff further states, that he was not served with any judicial process or notice of the proceedings, if any there were, which preceded the rendering of said judgment; nor was this plaintiff a party in any way to any proceeding, judicial or otherwise, preliminary to or preceding said judgment; nor had this plaintiff any notice or knowledge of the rendering of said judgment until long after the same had been rendered and entered of record, as aforesaid.

The plaintiff further states, that said judgment was rendered and entered of record, and said execution issued thereunder, without any right or authority of law, and the plaintiff has never consented thereto; but, on the contrary, he has at all times, since his knowledge of them, protested against said judgment and execution.

The plaintiff further states, that he has been informed, and believes his information true, that the City of St. Louis, in

the month of April, 1857, passed an ordinance, No. 3861, entitled " An ordinance to open and establish Chouteau avenue from Fifth street to the Mississippi river," and afterwards such proceedings were had before the mayor of said city that a jury was empannelled to assess the damages and benefits in respect to the opening and establishing of said avenue, and afterwards, as the plaintiff has been informed and believes, such other and further proceedings were had by the said City of St. Louis, before the mayor thereof, that on or about the fourteenth day of September, A. D. 1857, said jury rendered their verdict and delivered the same to said mayor, and said jury was then discharged.

All which proceedings and ordinances, in respect to the opening and extending of said avenue, the said city claimed and assumed the right to originate and prosecute in manner aforesaid, in virtue of an act of the General Assembly of the State of Missouri, entitled " An act to amend an act entitled an act to reduce the law incorporating the City of St. Louis, and the several acts amendatory thereof, into one act, and to amend the same, approved March 3, 1851 ; approved February 23, 1853."

The plaintiff further states, that after the rendering and delivering of said verdict as aforesaid, and after said jury was discharged as aforesaid, no other or further steps were taken by said city touching said verdict until on or about the seventh day of April, 1858, when the said mayor of said city rendered and entered up a judgment upon said verdict against the plaintiff for the sum of —— dollars, and for costs, which is the same judgment hereinbefore mentioned, and under which the execution now in the hands of the said marshal was issued, as before stated.

The plaintiff further states, that more than six months elapsed from the time said verdict of said jury was rendered, as aforesaid, before the said mayor entered up said judgment as aforesaid ; that there was no continuance or adjournment of said proceedings before said mayor, from day to day, or otherwise, from the time of rendering said verdict

to the day said judgment was entered of record, nor was there any continuance or adjournment of said proceedings from any prior day to the day on which said judgment was entered of record as aforesaid; but contrariwise, instead of adjourning or postponing said proceedings from the day on which said verdict was rendered to a subsequent day, for further proceedings in respect to said verdict, and the opening and extending said avenue, the said mayor and the said city, after receiving said verdict, and after discharging said jury, as aforesaid, suffered and allowed said proceedings to stand over, and be adjourned *sine die*. All of which was done and suffered by said city without the knowledge or consent of the plaintiff; wherefore, by reason of the said laches and omissions of said city and its. officers and agents aforesaid, said proceedings, touching the said verdict and the opening and extending of said avenue, were discontinued and became of no effect.

The plaintiff further states, that after said judgment was entered of record as aforesaid, and before the said execution was issued, the said act of the General Assembly of Missouri, before mentioned, was repealed by a subsequent act of said General Assembly, entitled "An act amendatory of and supplementary to the several acts incorporating the City of St. Louis, approved March 14, 1859."

The plaintiff further states, that he does not owe the said city the amount of said judgment, nor any part thereof, nor is he in any way liable or bound for the costs specified in said execution; and that the rendering of said judgment and issuing of said execution are unlawful, and contrary to equity and good conscience.

The plaintiff further states, that the rendering of said judgment and the sale of the above mentioned real estate, if not restrained by this court, will cast a cloud upon the title of the plaintiff to said land, and will tend greatly to depreciate the value of said real estate and greatly harass and embarrass the plaintiff in the enjoyment of his said property, and prevent him from making an advantageous sale or

other disposition thereof; therefore, in consideration of the premises, the plaintiff asks that a restraining order or injunction may be granted herein, restraining and enjoining the defendants and their agents and servants from selling said real estate, and from further proceedings under said execution, until the further order of this court; and that upon a hearing and trial herein, the defendants may be perpetually enjoined and restrained from all further proceedings under said execution in respect to said real estate, and that this court will grant such other and further relief in the premises as to this court may seem meet and equitable.

The court found the facts as follows:

The court finds that the plaintiff, at the time of filing his petition, was the owner and in possession of the land and premises described in his petition; that the mayor of the City of St. Louis, acting under the authority and by direction of said city, rendered and entered up the judgment mentioned in the plaintiff's petition; that said city caused an execution to be issued on said judgment, describing said real estate in said execution as stated in plaintiff's petition, which execution said city caused to be placed in the hands of Daniel A. Rawlings, who was then marshal of said city, with directions from said city to levy said execution on said real estate, and to sell the same; that said marshal levied said execution on said real estate, and advertised the same for sale as stated in the plaintiff's petition. And from the pleadings and proofs aforesaid the court further finds that the City of St. Louis caused proceedings to be instituted and prosecuted for the opening and extending of Chouteau avenue, in the city of St. Louis, at the time and in the manner stated in the defendant's answer; that said city, four weeks before empannelling a jury to assess damages and benefits in the matter of opening and extending said Chouteau avenue, published the notice given in evidence by the defendant, but the plaintiff's name was not inserted in said notice, nor was he served with said notice, nor did he in any way appear to the proceeding for the opening and extending of said avenue; that the said

city empannelled said jury to assess damages and benefits aforesaid on the 30th day of July, 1857, and the hearing of said matter was adjourned from time to time until the 14th day of September, 1857, when the said jury rendered their verdict as stated in the plaintiff's petition; that after the rendering of said verdict the said jury was discharged; that on the 5th day of January, 1858, the mayor of said city reported said verdict to the city council of said city, and on the 26th day of March, 1858, said city council confirmed said verdict; that on the 7th day of April, 1858, said city council passed an ordinance, No. 4158, appropriating the sum awarded by the verdict of the jury, to be paid by said city on account of opening and extending said avenue; and on the same day the mayor of said city rendered and entered up the said judgment, as stated in the plaintiff's petition. And from the pleadings and proofs aforesaid the court further finds that there was no continuance or adjournment of said proceedings before said mayor from the time of the rendering of said verdict, either from day to day or otherwise, to the time or day when said judgment was entered up as aforesaid, nor was there any continuance or adjournment of said proceedings from any prior day to the day on which said judgment was entered of record as aforesaid. And from the proofs aforesaid the court further finds that the city council of said city was in session on the 14th day of September, 1857, and continued in session till September 25, 1857; that said council was in session on the 7th day of April, 1858, and continued in session till August 13, 1858; that on the 7th day of April, 1858, there was no money in the treasury of the city which was derived from benefits assessed for the opening and extending of Chouteau avenue; that the first money received in said city treasury derived from such benefits was on the 19th day of September, 1859, and the whole amount received on account of said benefits up to 28th September, 1859, was $8,000; that the first money paid out by said city on account of the opening and extending of said avenue was on the 16th day of September, 1859, when said city

paid $7,800 to Elihu H. Shepard for a building situate on a narrow strip of land between Fourth and Fifth streets, and the whole amount paid out by said city on account of the opening and extending of said street up to the 28th day of September, 1859, was $11,957.50. And from the proofs aforesaid the court further finds, that the said city council, on the 4th day of April, 1857, passed an ordinance, No. 3861, entitled "An ordinance to open and establish Chouteau avenue from Fifth street to the Mississippi river;" that by an ordinance of said city the stated sessions of the said city council began on the first Mondays of May and October in each year; that at the time the plaintiff filed his petition in this case, said city had not opened, widened or extended said Chouteau avenue from the east side of Fourth st. to the Mississippi river, or any part of it by the removal of buildings or otherwise, and that said city, for the purpose of opening and extending of said avenue, removed part of a building situate on a narrow strip of land between Fourth and Fifth streets, belonging to Elihu H. Shepard, and for which said city paid said Shepard said $7,800. Therefore, it is ordered and adjudged and decreed by the court, that the said defendants and each of them, and their solicitors, agents and servants, be perpetually enjoined and restrained from further proceeding under said judgment and execution; and it is further ordered, adjudged and decreed, that the City of St. Louis pay all the taxable costs of this proceeding, and that the plaintiff have execution therefor.

*Leighton* and *Hayden*, for appellant.

An analysis of the evidence in the case will show that the following were the material facts, and these facts, when compared with the law and ordinance, will show that all proceedings were regular and according to law:

The proceedings of the city were under the 6th article of the amended city charter, (Act of the General Assembly of February 23, 1853,) and under ordinance 3477, ("to reduce into one the several ordinances in relation to the opening of

streets," &c., to be found at page 2074 of the City Ordinances, 3011 to 4677, approved December 12, 1855.) Under the the above law and ordinance the city council passed ordinance 3861, (" to open and establish Chouteau avenue," &c., to be found at page 2557 of City Ordinances, 3011 to 4677.) On the 4th of April, 1857, the mayor proceeded to give notice as required by § 3 of the above statute, which notice was dated June 23, 1857, and was in due form and duly published. The 30th July, 1857, was the day fixed in the notice for the hearing. It appearing by the marshal's return that some of the owners were unknown or could not be found by the marshal, a notice was (as § 3 of said act provides in such cases) published in two city daily newspapers, in due form and time of a hearing on July 30, 1857. (§ 3 of said act.) The jury was empannelled on that day, the 30th July, 1856. Adjournments were made by them, they at one time visiting the ground and making a personal examination of the property in the neighborhood, until the 14th September, 1857, when the verdict was rendered and the jury discharged. Within four months thereafter, the time allowed by law (§ 6 of statute) to wit, on the 5th day of January, 1858, the mayor reported the verdict to the city council within three months thereafter, the time allowed by law ( § 6 last quoted), and on the 26th day of March, 1858, the city council made an appropriation to pay the sums awarded to be paid by the city, &c., within twenty days after the council made this appropriation ; and within the time provided by ordinance 3477, to wit, on the 7th day of April, 1858, the judgments were entered up.

Thus everything provided by law and ordinance as a preliminary to the absolute vestiture of the right in the city having been done, the act of March 14, 1859, of which plaintiff speaks in his petition as repealing the act above referred to, can have no bearing upon the case.

The proceedings taken by the city in this case were strictly according to law and the ordinances of the city, and had the legal effect of vesting the right to the property described in

the plaintiff's petition in the city long before the act of March 14, 1859, was passed.

The statement of the procedings shows the regularity of the proceedings, and that the law and ordinances were strictly followed; that everything was done which was necessary, and done as the law required.

It is competent for the Legislature to direct the mode of giving notice in such cases, and if the requirements of the statute be complied with it is sufficient. (Owners of ground v. The Mayor, &c., of Albany, 15 Wend. 34; McMicken v. The City of Cincinnati, 4 Ohio, 394; Curry v. Mount Sterling, 15 Ill. 320; Methodist Church, &c., v. The City of Baltimore, 6 Gill. 391; State v. Beeman, 25 Me. 242; Stewart v. Board of Police, &c., 25 Miss. 479.)

The rights of the city had vested and the act of March 14, 1859, could have no operation in the case. (Wilkerson v. Buchanan County, 12 Mo. 328; Harrington v. County Commissioners of Berkshire, 22 Pick. 263; Hampton v. Coffin, 4 N. H. 517; Hallock v. The County of Franklin, 2 Met. 558; Bloodgood v. The Mohawk & Hudson R. R. Co., 14 Wendell, 51.)

II. Even if all the allegations of fact in the plaintiff's petition were true, and the proceedings were wholly irregular, he was not entitled to an injunction, and the decision of the court below ought to be reversed. The plaintiff's proper remedy was by *certiorari.*

The proceedings of public bodies, or officers authorized by law to exercise special powers of the kind in which the people at large are concerned, cannot be annulled by a complaint alleging matter in equity, whether its form be petition for injunction or bill in equity. The law has provided the special remedy of *certiorari* for such cases, by which all proceedings may be suspended and brought for review before a competent tribunal. (The Mayor, &c., of Brooklyn v. Meserole, 26 Wend. 132; Van Doren, &c., v. The Mayor of New York, 9 Paige Ch. 388; Heywood v. The City of Buffalo, 14 N. Y.; 4 Kernan, 534; Methodist Church v. The

27—VOL. XXXIV.

Mayor, &c., of Baltimore, 6 Gill. 391; Swann v. The Mayor, &c., of Cumberland, 8 Gill. 150; Nicholls v. Sutton, 22 Geo. 369; Myers v. Symons, 4 Iowa, Clarke, 500.)

The above cases from the New York reports show that the blending of the jurisdiction and functions of courts of law and equity in one tribunal does not alter the law in this respect. The party complaining must not only bring his matter of complaint before the court, but must bring it before the court in a shape and by a process adapted to the nature and circumstances of the case. If only the equitable powers of a court are invoked, and the plaintiff in his petition fails to make out a case of equitable cognizance, he is entitled to no judgment. (See especially the above cited case of Heywood v. The City of Buffalo, 14 N. Y., 4 Kernan, 540.)

*Krum & Harding*, for respondent.

The following chronological statement of facts will assist in arriving at a proper understanding of the case, viz:

The amended city charter, under which the proceedings in question originated, was approved February 23, 1853. (Rev'd Ord's 1856, p. 157.) The act amending the city charter, approved March 14, 1859, repeals the act of February 23, 1853. (Laws 1st session of 20th General Assembly, 1859, § 16, and last section, p. 169, &c.) The general ordinance for taking private property for public use, No. 3477, was approved December 12, 1855. (Rev. Ord. 1856, p. 606.) The special ordinance for widening and extending Chouteau avenue was approved April 4, 1857. The mayor by his notice fixed June 23, 1857, as the day for empannelling the jury. The jury to assess damages and benefits was empannelled on July 30, 1857. The jury adjourned to July 31. The jury adjourned to August 1. The jury adjourned to September 7. The jury adjourned to September 14, and on the last named day rendered their verdict and delivered same to the mayor. On the 5th January, 1858, the mayor reported the verdict of the jury to the city council, notwithstanding the city council was in actual ses-

sion on the 7th of September, 1857, and continued in session until verdict confirmed March 26, 1858. On the 7th April, 1858, the city council made an appropriation to pay the assessment against the city made by the jury, but at the time of making said appropriation there was no money in the city treasury derived from benefits assessed by reason of the opening of Chouteau avenue. The mayor rendered judgment on 7th April, 1858. When the jury rendered their verdict on 14th September, 1857, they were discharged, and no further entries appear in respect to the case in the register's record, nor in that of the mayor. The plaintiff's property does not front on Chouteau avenue.

I. The mayor of the City of St. Louis had no authority in law to render the judgment set out in the record in this case. From the 14th September, 1857, the day on which the verdict of the jury was rendered, no continuance or any other order was made in the case until the 7th of April, 1858, when judgment was rendered. If the mayor ever had rightful jurisdiction over the subject matter or the parties in interest, he lost it by his own laches. He did not follow the statute. The rule is, without exception, that inferior tribunals, not proceeding according to the cause of the common law, are strictly confined to the statute that confers on them their jurisdiction. The rule *stricti juris* is clearly applicable to this case. (26 Mo. 65 ; 2 How. U. S. 319 ; Bird v. Wilmington R.R. Co., 4 Am. Law Reg. 222.) It is a fundamental principle in our government and laws, that individuals are protected in the enjoyment of their property, except so far as may be taken in one or two ways, viz: as a public tax, upon principles of just equality, or for public use with a just compensation ascertained according to the provisions of the Constitution. Money is property, and the collection of every tax is a taking in some mode.

II. The proceeding for opening streets and assessing damages and benefits is *quasi* judicial in its character. The record does not show that the city or the mayor had jurisdiction of either the person or property of the respondent. He

had no notice in fact of the notice or proceedings before the
mayor before the verdict and judgment, and the constructive
notice relied on by the appellant was irregular and insuffi-
cient. After the lapse of time between the rendition of the
verdict by the jury and the approval of it by the council,
and the entering up of the judgment in question, the mayor
could not, without previous notice to the respondent, render
the said judgment. If judgment can be rendered or entered
up upon a verdict of a jury that has lain dormant for six
months, why may it not be done after the lapse of six years?
(2 B. Mon. 453 ; 7 How., Miss., 99.)

III. The act of March 14, 1859, repeals the act of February
23, 1853 : there is no saving clause in the repealing act in
respect to proceedings begun or pending under the act of
1853. All pending or unfinished proceedings which were
originated under the last named act fell with it. Hence
there was no authority or law that authorized the sale of the
property in question under the execution issued July 29,
1859. (2 Hammond, Ohio, 505.)

IV. The proceedings in question are of a character to cast
a cloud upon the title of the plaintiff to the land set out in
his petition. An injunction restraining the threatened sale
is the proper remedy in such cases.

BATES, Judge, delivered the opinion of the court.

It has been held by this court in the case of the City of St.
Joseph v. Anthony, 30 Mo. 537, which was a suit for the
collection of an assessment on a lot owner to pay for macad-
amizing an adjoining street, that it was not necessary that
the plaintiff (the city) should prove a strict compliance with
all the ordinances directory as to the subject, but that the
defendant might show a neglect of duty by the authorities,
and if he was injured thereby, it might constitute a defence.

In like manner in this case, we inquire only whether the
proceedings which resulted in executions against the plain-
tiff contained any substantial defects injurious to him, and
we arrive at the following conclusions :

1. The act of 1859, which repeals the act of 1853, did not affect this proceeding, which was begun before the passage of that act, under ordinances previously passed.

2. The fact that the plaintiff had no actual notice of the proceedings, does not invalidate them as to him or release him from liability. The act only requires notice to the persons to be benefitted, to be given by publication in newspapers, as was done.

3. No formal continuances from time to time were required to be made part of the record.

4. The fact that there was no money in the treasury of the city when the appropriation was made, is of no consequence to the plaintiff, who was not entitled to receive any part of it. There is no pretence that the plaintiff's property was not justly the subject of the assessment, nor that the assessment was higher than it ought to have been, if the proceedings complained of had been regular ; and there is no equitable merit in the complaint of the plaintiff, which is founded purely upon technical grounds ; and as the proceedings substantially conformed to the statute and ordinances, judgment should have gone against the plaintiff.

Judgment reversed and cause remanded. Judge Dryden concurs. Judge Bay did not sit in the cause, having been of counsel in it.