IN

# THE SUPREME ·COURT

OF

## THE STATE OF MISSOURI,

FEBRUARY TERM, 1866, AT ST. JOSEPH.

WILLIAM FOWLER, Respondent, *v.* THE CITY OF ST. JOSEPH, Appellant.

1. *Revenue—Special Tax—Sale—Lands.*—The charter of the City of St. Joseph, approved Nov. 21, 1857, authorized the mayor and councilmen to provide for the improvement of the streets, alleys, &c., and that the cost should be borne by the owners of the adjoining property, and be apportioned and charged on the adjoining lots in proportion to their fronts, in such manner as should be prescribed by ordinance. The charter further provided that the assessments made to pay for such improvements should be a lien upon the lots of the adjoining owners, and that the owners should be liable to an action as upon like liabilities contracted by themselves; and also that the lien might be enforced by a special tax, levy and sale, as well as by proceedings at law, in such manner as might be prescribed by ordinance. By ordinance of Feb. 4, 1858, the city provided for the improvement of a street in front of several lots owned by plaintiff, and directed that if the bills for such improvements were not paid within ten days after demand by the collector they should bear interest at twenty per cent., and should be placed in the hands of the city attorney to be collected by proceedings at law. Subsequent to the improvement of the street in front of defendant's property, the city passed an ordinance amending that of Feb. 4, 1858, providing that the cost of such improvements should be enforced by a special tax, a levy, and sale. Under this amendatory ordinance, the city proceeded to levy upon the lots of the plaintiff and advertised them for sale in gross,

without instituting any proceedings at law to enforce the lien. Upon a bill filed to enjoin the defendant from making such sale—*Held,* 1. That, as the action of the defendant tended to throw a cloud upon the title of the defendant, a bill for an injunction was a proper remedy. 2. That the proceeding to enforce collection of the cost of the improvements under the amendatory ordinance by a levy and sale was void, as the ordinance was retrospective in its operations, the work having been done under the ordinance which provided for the collection of the bills by a suit at law. 3. That the cost of the improvements should be charged to each several lot according to its front, and not to several lots in gross. 4. That where party sets up a pretension to sell the land of another in such a manner as will work a divestiture of title, without judgment or judicial process, it will devolve upon him to show that he has strictly pursued the power conferring the right.— That no liberal or equitable construction can be permitted in such a case, nor any presumptions be allowed where the inevitable effect would be to deprive the citizen of his property without invoking the law of the land or the judgment of his peers.

*Appeal from Buchanan Court of Common Pleas.*

*Vories & Vories,* for appellant.

The rule of law that strictly construes the powers granted to a corporation, and requires all acts to be done in strict conformity with the provision of the act conferring the power, does not apply the construction of the ordinances passed by such corporation, and acts done by its officers in carrying out and executing a general power clearly granted, where the manner of the execution of the power is left to the discretion of the corporation. When a corporation is clearly invested with power to legislate upon a particular subject, and for a particular end, without being directed in the act to use any particular kind of legislation, then the ordinances passed by the corporation and the acts done by its officers in carrying into effect the general power granted are most liberally construed; and if they substantially follow the directory parts of such ordinances, and the end is accomplished, the acts of the corporation and her officers will be upheld by the courts. (Taylor v. City of Carondelet, 22 Mo. 106–12.)

The evidence in this case shows that the work was let and the contract completed, received and certified, substantially, in conformity with the charter and ordinances; and the work

being really performed, as required by the contract, for a fair price, the plaintiff has no right to complain, and cannot have an injunction without at least tendering the amount due. (Page v. City of St. Louis, 20 Mo. 136; Risley v. City of St. Louis, 34 Mo. 404; City of St. Joseph v. Anthony, 30 Mo. 537 ; City of St. Louis to use, &c., v. Hardy, 35 Mo. 264.)

The plaintiff had no right to an injunction if the taxes were legally assessed and unpaid, as in such case he had a plain remedy, and could have prevented any irreparable damage done to the property by the payment of what was really due.

The approval of the form of the bond given for the execution of the work, and the endorsement thereof on said bond, and the filing of said bond with the city register, were directory acts prescribed by ordinance for the protection of the city in the faithful execution of the contract; and if the contract was faithfully executed and performed and the work received, the plaintiff is not injured and has no right to complain.

The evidence shows that the work was well done, and done for a fair price, and substantially in conformity with the law and ordinances governing the same, and that the city was following her legitimate right to collect the debt assessed therefor against plaintiff, and the court below ought to have found in favor of defendant.

The sale was advertised in substantial conformity with the law and ordinances, and plaintiff does not pretend that he would be injured by any defect in the advertisement.

The ordinance making the cost of work to be done a special tax, and authorizing the adjoining property to be advertised and sold for the collection thereof, only applied to the remedy used to collect money already due and to become due for taxes, and did not affect or change the obligation of the contract in any way whatever. It is therefore valid and binding, not being in conflict with any ordinance or law, or with the constitution of this State or of the United States. (Lessee of Buckley v. Osborne, 8 Ohio, 181.)

*Woodson & Jones*, for respondent.

We hold that this court must affirm the decree of the inferior court upon the following grounds:

I. Because the appellant is a corporation and can exercise no power that is not expressly granted to it by the terms of its charter, or by necessary implication; and that in the exercise of its powers it must act in strict conformity with the law of its creation. (Head v. Providence Ins. Co., 6 Curt. Cond. U. S. 463–4; Perrine v. Chesap. & Del. Canal Co. 18 id. 82; Beaty v. Knowles' Less. 9 id. 40; Doe v. Chum, 1 Blackf. 336; Blackw. Tax Tit. 525.)

II. In all cases in which it is sought to sell land for the nonpayment of taxes, a strict and *literal* compliance with the law must be shown on the part of *all* having any duty to perform in connection with the matter. (Thatcher v. Powell, 6 Wheat. 119; Williams v. Peyton's Lessee, 4 Mo. 74; McLurg v. Ross, 4 Curt. Cond. U. S. 582; Blackw. Tax Tit. 46–7; Early v. Doe, 16 How. U. S. 610; Doughty v. Hopes, 3 Den. 595; 9 Cranch, 64; 6 Mo. 74–5; Reed v. Morton, 9 Mo. 878; O'Brien v. Coulter, 2 Blackf. 421; Mason v. Frunson, 9 How. 248; Jackson v. Esey, 7 Wend. 148; 4 Hill, 86; Smith v. Hillmore, 1 Scam. 333.) All of the facts connected with the assessment and collection of the tax must be ascertained to exist before the power to sell attaches. (Blackw. Tax Tit. 37–8; Thatcher v. Powell, 6 Wheat. 119; Tallman v. White, 2 Comst. 70; Hughes v. Howe, 2 Hamm. 231; Farnam v. Buffum, 4 Cush. 267; 6 Mo. 64; 17 Mo. 161.)

III. The defendant and its agents seek to sell plaintiff's property, and deprive him thereof, when defendant admits, in its answer to the amended petition, that its agents have not complied with the law or ordinances regulating the sale of real estate for the nonpayment of costs assessed for improvements adjoining the property sought to be sold.

In the first place, an assessment of the property to be taxed must be made. A listing and valuation of the land for tax-

ation must be made within the time and in the manner required by law to render a tax title valid. This is a prerequisite which cannot under any circumstances be dispensed with. (Blackw. Tax Tit. 113–14; Isaacs v. Wiley, 12 Vt. 677; 9 Ohio, 93.) In this case certain of these prerequisites required by the city ordinances or charter have not been complied with.

Appellant insists that these regulations in the charter and ordinances are simply *directory;* but we hold that every requirement of the law, whether substantial or merely formal in its character, and having the semblance of benefit to the owner, which the Legislature have said shall attend the execution of the power, ought to be strictly observed by the officer entrusted with its execution, or no title will pass by the sale. (Blackw. Tax Tit. 81.)

The foregoing requirements of the charter and ordinances might be regarded as simply directory in a suit for the recovery of the costs of the work; but we deny that such is the case in a proceeding to recover land sold for taxes, or in a case like this one. (8 Port. 104; Yancy v. Hopkins, 1 Minor, 171; Br. Bank v. Bates, 2 Minor, 688 et seq.; Reed v. Morton, 4 McLean, 211.) The authorities all agree that no step in the entire proceeding, from the ordering of the work to be done down to the divestiture of the title of plaintiff, that was required by law, and that even had the semblance of advantage to plaintiff, can be dispensed with.

IV. Because the appellant was seeking to sell plaintiff's property to pay for costs that had never been made out and properly assessed under the amended charter against it, and consequently without any legal authority for so doing.

The ordinance prescribing the mode that is in force at the time the work is done, and payment demanded, is the only one that can prevail. When this work was done, and payment for doing it was refused by the defendant the law provided that before payment could be coerced suit must be brought, and a verdict of a jury and judgment of a court of competent jurisdiction had. In other words, the

individuals charged with the work had the right to a trial by a jury before they could be compelled to pay for the work, and upon that trial they had the right to show that the work had not been done, or, if done, not well done; that they had been injured by the agents of defendant, by the manner in which such agents had discharged their duties. These were subsisting, legal, constitutional rights pertaining to the plaintiff at the time they refused to pay for the work. They cannot be deprived of those rights by virtue of the ordinance of October 27, 1859. The right of trial as it existed at common law is guarantied by the constitution of the State, and that same constitution expressly provides that no one shall be "deprived of life, liberty, or *property*, but by the judgment of his peers, or the law of the land." (See Mag. Charta; Vorgunt v. Waddle, 2 Yerg. 270 ; Burger v. Carter, 1 McMullen, 114 ; 5 Webst. Works, 487 ; Taylor v. Porter, 4 Neill, 146.) The phrase "law of the land" is well defined by the authorities here cited. We hold, then, that the amended charter of the defendant is unconstitutional and void so far as it attempts to confer the power of disposing of the property without suit; 1st, because it is violative of the letter and spirit of the constitution of the State ; it deprives individuals of their property without trial, or an opportunity being afforded to be heard in vindication of their rights. We hold that no ordinance passed after the work was done can affect the rights existing at the time it was done.

So, too, we maintain, that whenever lands or town lots are sold by a public officer—or, in other words, in all forced sales—the lands have to be sold in lots according to the legal subdivisions thereof, and all town lots separately, unless peculiar circumstances forbid such a course. This has been settled in many cases by our own Supreme Court. (Blackw. Tax Tit. 324; Haydon v. Foster, 13 Pick. 492.)

Corporations must conform to the mode and manner of levying and collecting the tax prescribed by their charters, which constitute their organic law. (Kemper v. McClelland, 19 Ohio, 324 ; Hope v. Dedrick, 8 Humph., Tenn.) The

power is a limited one, and must be strictly pursued and strictly construed. (Nicholl v. Nashville, 9 Humph. 252; Bergen v. Clarkson, 1 Halst., N. J. 352; City of Washington, v. Pratt et als. 8 How. 681, & 5 Curt. Cond., S. C. 538.)

WAGNER, Judge, delivered the opinion of the court.

By the amended charter of the City of St. Joseph, approved November 21, 1857, power was given to the mayor and councilmen of said city to macadamize, pave, and otherwise improve and keep in repair, the streets, alleys and avenues in the city limits; and it was provided that the cost of all macadamizing, paving and repairing, done in any street, alley or avenue by order of the mayor and city council, should be borne by the owners of the adjoining property, and should be apportioned and charged on the adjoining lots in proportion to their front, in manner to be described in ordinance, and should be paid by the owners of such lots respectively; and the city engineer should make out and hand to the city collector for collection, on the first Monday in May and November in each year, the account of such apportioned costs of the improvements made during the six months preceding, and the owners of lots charged therewith should be bound to pay said costs charged like liabilities contracted by themselves, and might be sued therefor accordingly; and the lots or lands charged should also be held by a lien for the respective apportioned share of such cost, until the same, with all the costs attending the collection, be fully paid. And it was further provided, that such lien might be enforced by a special tax, levy and sale, as also by proceedings at law, all according to such proceedings and in such manner as might be prescribed by ordinance; and any share of such costs which should not be paid at the time the same was made payable by ordinance, should until paid bear and be chargeable with such rate of interest as the city council might ordain, not exceeding twenty per centum per annum.

In pursuance of this power, the city authorities by an ordinance approved February 4, 1858, provided that whenever

they should order any street, alley or avenue to be improved, the city engineer should let out the contract for the same, and the cost of such improvement should be assessed against the owners of the property fronting thereon, and the cost of the improvement provided for should be borne by the owners of property adjoining such improvements, and should be apportioned and charged to the adjoining property by the city engineer according to the front feet of each owner.

By section 3d, the city engineer, in each year, on the first Monday of May and November, was authorized to make an apportionment of the cost of such improvement amongst the owners according to the number of front feet fronting thereon, and make out and certify to the bills against each person charged, and deliver the same to the city collector and take his receipt therefor; and the city collector was to present said bills for payment to the person or persons charged, or to his or their agents, within five days after receiving the same. And by section 4, it was declared that if said bills be not paid within ten days after demand made by the collector, as provided in the third section of the ordinance, the collector should deliver the same to the city attorney, who should commence suit thereon; and said bills should, until paid, bear interest at the rate of twenty per cent. per annum from the time they were payable.

By an ordinance amendatory of the foregoing ordinance, approved Oct. 27, 1859, it was provided that such improvements should be apportioned and charged to the adjoining property, by the city engineer, according to the front feet of each owner, and that the amount so apportioned should constitute a special tax on the property, and be paid by the owner; and if the said bill or special tax was not paid within ten days after demand, interest was to be paid at the rate of twenty per cent., and the collector was to proceed to collect the same as in the case of other unpaid and delinquent taxes on real estate which authorized a levy and sale without suit. And it was made to apply to all macadamizing, guttering, paving, and other improvements of the streets, alleys and

avenues of the city, done by order of the mayor and city councilmen after the first day of January, 1858, and for the costs of which suit had not been brought, as well as that which should be done thereafter.

The ordinance establishing and regulating the engineer's department, approved December 10, 1857, provided, among other things, that all public works ordered by the city should be let out by the city engineer to the lowest and best bidder, and that notice of such letting should be given for two weeks in some newspaper employed by the city, in which the nature of the work, the place where the specifications might be seen, and the time when the bids would be received, were to be stated. The performance of all contracts was to be secured by at least two sufficient securities, and all contracts, after being drawn up, were to be submitted to the city attorney for his approval of the form thereof, which approval he was to endorse on the contract, and it was then to be filed with the city register; the city engineer was to certify to the account of the contractor who had finished and completed his work according to contract, but was not to certify when he had failed to perform his contract.

The contract for the work in controversy was made in pursuance of the ordinance of February 4, 1858, and the work and labor performed under the operation of that ordinance; but the proceeding for coercing the payment for the labor is attempted under the amendatory ordinance of October 27, 1859.

The petition charges that the work done upon the street and charged to plaintiff is for the payment of the assessment, or costs, of which his lots were advertised for sale, was not let to contract as required by law; that it was not let to the lowest and best bidder, nor was notice of it published in a paper as required by law; that the performance of the contract, secured by two sufficient securities, was not approved by the mayor; that it was not submitted to the city attorney for his approval of the form, nor was his approval endorsed thereon; that it was not filed with the city regis-

ter, nor was its correctness certified to by the city engineer. And the petition also charges that, when the work was done, the city was not authorized by any ordinance or law to advertise and sell property to pay for improvements made upon the streets adjoining or otherwise ; and that at the time the work was done, and plaintiff refused to pay for the same, the costs of such work were not a special tax upon the lots advertised for sale.

The answer admits that the right to sell the lots by the city collector is claimed alone under the amendatory ordinance ; and it is further admitted by the defendant that all the requirements of the ordinances were not strictly complied with, but it is claimed that these were mere formalities, and that the plaintiff was not injured by the noncompliance.

The law we regard as settled in this State, that a substantial compliance must be shown with the ordinances or by-laws to authorize a municipal corporation to recover for assessments or improvements ; but a strict observance of all the formalities prescribed by the ordinances, which are merely directory in their character, will not be required.

If the power or authority has been pursued substantially, and the neglect is of matter which is only formal, and could not work injury to the other party, it will not vitiate or defeat the proceedings.  The defendant resisting the enforcement of the claim is always at liberty to show that there' has been a neglect of duty on the part of the authorities entrusted with the execution of the work, and if such neglect has injured him it will constitute a defence.  ( City of St. Joseph, v. Anthony, 30 Mo. 537 — affirmed in Risley v. City of St. Louis, 34 Mo. 404.)

This is the rule when the parties are contesting their claims in an action at law for the contract price of the work, and where each can be heard and have their respective rights determined by a legal tribunal ; but where a party sets up a pretension to sell the land of another in such a manner as will work a divestiture of title without judgment or judicial

16—VOL. XXXVII.

process, it will devolve on him to show that he has strictly pursued the power conferring the right. It is a high prerogative of sovereignty, derogatory of the common law, and the execution of the power should be strictly pursued and procured.

Every statute in derogation of the rights of property, or that takes away the estate of the citizen, ought to be construed strictly. No liberal or equitable construction can be permitted in such a case, nor are presumptions to be allowed where the inevitable effect would be to deprive the citizen of his property without invoking the law of the land, or the judgment of his peers. But we will not stop to inquire whether the plaintiff was injured by the neglect of the city in failing to comply strictly with every formal requisite of the ordinance as to the mode of advertising, having the contract approved by the city attorney, and the same with the endorsement thereon filed with the city register.

The amended charter prescribes that the burden of making the improvements shall be borne by the owners of the adjoining property, and shall be apportioned and charged on the adjoining lots, in proportion of their fronts, in manner to be declared by ordinance. It is not shown that any such apportionment and charge was made within the meaning of either the act or ordinance. Certainly the advertisement offering the property for sale is not sufficient, for that simply states that so many lots will be sold for a certain sum in gross. We entertain no doubt about the proper construction to be placed upon the amended charter, and *that is,* that the amount should be apportioned and charged to each lot separately according to its respective front, and that the advertisement should conform to the charge and apportionment. Each lot should properly stand encumbered with no more than the charge assessed against it, and the lien on each should be several and distinct. Any other construction would be productive of mischief and inconvenience.

The 15th section of the ordinance under which this proceeding to sell is sought to be enforced, gives the person

whose real estate is sold the right to redeem within two years, upon payment to the purchaser the amount paid with interest and costs; and Mr. Justice Johnson, in Corporation of Washington v. Pratt (8 Wheat. 682), in delivering the opinion of the Supreme Court on a question identical with the present one, said, that it resulted "not less from the provisions of this 8th section, which gives the right of redeeming severally, than from the consideration that, in case of a partial sale by the proprietor of many lots, the purchaser from him would not, by the act of transfer, hold his purchase disencumbered of its own particular taxes, either absolutely or upon the contingency of the remaining lots of his vendor being adequate to the satisfaction of the taxes due on the whole. Nor would a purchaser of a single lot hold his purchase encumbered with the taxes due on the whole mass of lots held by his vendor. Each would have the right to redeem upon paying the taxes assessed on his own particular purchase, and would hold his purchase subject to such taxes."

Again, when the contract was made and the work executed, the law in force did not make the amount apportioned a special lien on the property, but only created a personal liability to be enforced by an action at law. It is contended by the counsel for the appellant, that the law under which the sale was attempted only changed the remedy, and was therefore not obnoxious to any objection. But we cannot subscribe to this. We cannot concede to this law validity and force, in this particular case, without making it retrospective and doing violence to well established landmarks. Under the law existing at the inception of the plaintiff's liability, and even after the contract was carried out and performed, he had the right to be heard and contest the matter in a court of law; this proposes an entire change, and to divest him of his estate in a summary manner, without either trial or judgment. It reaches beyond the remedy and goes to the absolute right. If such substantial changes can be made under the specious pretence of altering the remedy, the rights of the citizen rest on a slender foundation.

Sawyer et al. v. Hann. & St. Jo. R.R. Co.

An objection has been urged that injunction was not proper, and that plaintiff had ample redress at law; but this court has allowed relief by injunction where real estate was about to be sold for the non-payment of taxes assessed by a municipal corporation, but has never allowed it to prevent a sale of personal property. In one case a cloud is about to be drawn over a land title, and the court interferes to prevent it; in the other case the legal remedy is complete and full, and equitable interposition is not needed. (Lockwood v. City of St. Louis, 24 Mo. 201.)

The city in this case is not remediless, but it must pursue its redress in a different way.

The judgment is affirmed. Judge Holmes concurs; Judge Lovelace absent.