TOWN OF PACIFIC v. SEIFERT, *Appellant.*

1.  **Printed Laws and Original Rolls, as Evidence of the Charter of a Town:** EXCEPTIONAL CASE. The original roll, as deposited with the Secretary of State, is the best evidence of a legislative enactment. Yet, where there was a discrepancy between the charter of a town as published in the printed laws of the State and the statute roll on file in the office of the Secretary of State, in this, that in the former it was provided that the trustees of the town might impose fines for breach of any of their ordinances, not to exceed $20 in amount, and, in the latter, the word "twenty" was ninety: and from aught that appeared in the record this discrepancy was first brought to the attention of the defendant upon his trial, about twenty years after the enactment of the charter; in an action by the town to recover of him a penalty of $90 for refusing to take out a merchant's license, as required by ordinance; *Held*, that under the exceptional circumstances of the case, the printed copy of the charter would control in determining defendant's liability.

2.  **An Ordinance** penal in is nature, must be strictly construed.

    An ordinance of the town of Pacific construed and *held* not to

provide any penalty upon merchants for failure to take out license, but only for failure to pay the *ad valorem* tax therein prescribed.

*Appeal from Franklin Circuit Court.*—Hon. A. J. Seay, Judge.

REVERSED.

*John R. Martin* for appellant.

*Crews & Booth* for respondent.

PHILIPS, C.—This is an action instituted by the town of Pacific against the appellant to recover the sum of $90, as a penalty for refusing to take out a merchant's license from said town. It appears from the evidence that Pacific was incorporated as a town in 1859 by an act of the legislature. Laws of 1859, p. 179. It is clear to my mind that no power was conferred upon the municipal authorities of this town to exact a merchant's license by the original charter. This fact seems to have been recognized by the plaintiff, for, in 1874, it procured from the legislature an amendment to its charter, (Laws 1874, p. 353,) conferring on the trustees of said town authority "by ordinance to impose a license tax on merchants" and "to provide for the collection of the same." Judgment was rendered by the justice for the town, and defendant appealed to the circuit court, where, on a trial *de novo*, judgment was rendered again in favor of plaintiff, for the sum of $25, from which defendant has appealed to this court.

By section 7 of the charter of this town, as published in the laws of 1859, *supra*, it is provided that the trustees "may impose fines or imprisonment for breach of any of their ordinances, such fine not to exceed $20, and such imprisonment not to exceed ten days." Under this statute, as published, it is quite clear there was no power vested by the charter in the trustees to pass an ordinance authorizing the imposition of a greater fine than $20. To meet this palpable objection the plaintiff at the trial offered and read

in evidence, against the objection of defendant, a certified copy of this charter, as enrolled by the legislature, as the same appears on file in the office of the Secretary of State, from which it appears that the word "twenty" in the provision above quoted, is "ninety" in the enrolled bill. It is not unimportant to state that this certificate by the later Secretary of State is dated June 10th, 1879, and, for aught that appears in the record, the discrepancy between the act as published and as passed was for the first time called to defendant's attention at the trial in 1879.

The first question, therefore, to be decided is, under which of said copies of the charter should the defendant's cause have been determined? The legislature of the State by general law, (Ch. 97, p. 1028, R. S. 1855,) made general and very complete provisions for the publication and circulation of the acts passed at any succeeding legislature. It was made the duty of the Secretary of State to prepare, from the original rolls in his office, for publication, all laws passed. He was to compare the printed copies and see that they were correct. "And when the whole are printed, he shall note all errors which have been committed, and cause a memorandum thereof to be annexed, together with an attestation, under his hand, that he has collated the laws therein contained, with the original rolls in his office, and corrected the same thereby." The succeeding sections of the said chapter provide, with much particularity, the manner of the distribution of these statutes, the object evidently being, aside from the use of the officials of the State and local governments, to bring the laws of each legislature as near as might be to the people. It is to these statutes the people are accustomed to look for the laws for their government. The laws of 1859, in question, were certified by the then Secretary of State, in accordance with the provisions of the general statute just adverted to. By section 1, chapter 54, Wagner's Statutes, page 590, "the printed statute

1. PRINTED LAWS AND ORIGINAL ROLLS, AS EVIDENCE OF THE CHARTER OF A TOWN: exceptional case.

books of the State, printed under its authority, shall be evidence of the private acts therein contained."

For twenty years the charter of the municipal corporation in question has stood with the word "twenty" unchallenged in the published statutes of the State. The defendant, with other citizens of that town, had a right to assume that the published statute was correct, and to act accordingly. It is contrary to the whole genius and spirit of our institutions that our penal statutes, or other statutes, affecting the personal property and rights of the citizens, should remain a sealed volume, or for twenty years lie unpublished in the vaults of the Secretary of State, to be brought forth for the first time on the arraignment of a citizen for a violation of some of its provisions, especially in a case like the one at bar.

We make no controversy with the correctness of the rule, that in the case of a contest as to what is the best evidence of a legislative enactment, the original roll as deposited with the Secretary of State is to be preferred; for this is what the authorities and adjudications denominate "the statute roll." *Pacific R. R. Co. v. The Governor*, 23 Mo. 353. Nor are we unmindful in the expression of these views of the danger suggested that the mere blunder of the secretary in his copying, or of the printer in publishing, might make a law without the legislative sanction. We rely on the exceptional circumstances of the case at bar, on a very ancient and wise maxim that "the law so favors the public good that it will permit a common error to pass for right." Noy's Maxims, 37, 4 Inst. 240.

This point came before the Supreme Court of the United States in the case of *Pease v. Peck*, 18 How. 595. Mr. Justice Grier said: "It is no doubt true, as a general rule, that the mistake of a transcriber or printer cannot change the law; and that when the statute published by authority is found to differ from the original on file among the public archives, the courts will receive the latter as containing the expressed will of the legislature in preference

to the former.    Yet, as the people who are governed by the laws, and the courts who administer them, practically know the law only from the authorized publication of them, the propriety of recurring to an ancient, altered and erased manuscript, for the purpose of changing their construction, after a lapse of thirty years and after their construction has been long settled by the courts, and has entered as an element into the contracts and business of the citizens, may well be doubted.    The reception and long acquiescence in them, as printed and distributed by authority, by those who had it always in their power to alter or annul them, and did not, may be justly treated as a ratification of them in that form by the sovereign people."    It is true this was the opinion of a divided court, but it is no less authoritative.    And there is so much of wise conservatism and consonance with our form of government, that the majority view commends itself under the circumstances of this case, to my fullest sense of justice.    If plaintiff would avail itself of the larger penalty or fine, it should take appropriate measures for the publication of its charter, and bring its provisions to the attention of the people to be affected by them.

There is another view of this case equally fatal to the proceeding instituted in this case.    Section 1 of the ordi-

2. AN ORDINANCE.    nance passed by said town fixes a license tax on merchants of $10.    Section 2 requires merchants to pay an *ad valorem* tax equal to that assessed upon real estate.    Section 3 provides that it shall be the duty of every such merchant, on or before a given time, who shall have obtained a license, to file with a named officer a statement of the goods held by him between certain dates.    This statement is to be abstracted and filed by the town clerk, certified and delivered to the collector, to be by him collected.    Section 4 requires the merchant to verify this statement by affidavit.    Section 5 is as follows:  " Every person, or co-partnership of persons, to whom a license shall have been granted, or who are required to obtain a

license to vend goods, wares and merchandise, and who shall have filed a statement as herein required, and failed to pay, or refused to pay the amount of revenue so owing to the collector of the town, or who shall fail to make the statement above required, shall upon conviction thereof be deemed guilty of a misdemeanor, and be punished by a fine of not less than $25 or more than $90."

It is to be observed that two taxes are provided for in this ordinance. A revenue and license tax, which are distinct. Now, does section 5 provide anything more than a conviction, as for a misdemeanor, for failing to pay the revenue or *ad valorem* tax? Only the person who has obtained the license, or is required to obtain one, "and who shall have filed a statement as herein required and failed to pay, or refused to pay, the amount of revenue so owing to the collector of the town, or who shall fail to make the statements above required, shall be deemed guilty of a misdemeanor, and be punished by a fine. The words "failed to pay" from their context refer evidently to "the revenue so owing to the collector." It does not, in terms, provide any penalty for the failure to take out the license. The statute being in its nature penal must be strictly construed, and its provisions cannot be carried beyond its express terms. *Fowler v. City of St. Joseph*, 37 Mo. 228; *Ellis v. Whitlock*, 10 Mo. 781.

It is obvious, from the whole context of this section 5, that the subject matter in the mind of the framer of it was the enforcement of the duty of the merchant to furnish a "statement" and to pay the collector the amount of that "revenue." The recognized distinction between a revenue taxation and a mere license, pertaining to police regulation, gives a clear meaning to the word "revenue" employed in the section under consideration.

It follows that the judgment of the circuit court is not sustainable. The same is accordingly reversed and the action dismissed. All concur.