CASEY AND CASEY, Respondents, v. ST. LOUIS TRANSIT COMPANY, Appellant.

St. Louis Court of Appeals, November 14, 1905.

1. **DAMAGES: Penal and Remedial Statute: Strict Construction.** Section 2864, Revised Statutes of 1899, providing for the forfeiture of the sum of five thousand dollars to the immediate relatives of one killed through the negligence of certain persons enumerated, is both remedial and penal; it is remedial in providing compensation to the relatives and penal in that the damages are in a fixed sum regardless of the amount of actual damages for the purpose of preventing repetitions of the wrongful act and protecting the public; being penal, it must be strictly construed.

2. ———: ———: ———. Such statute having fixed a penal sum of five thousand dollars which may be recovered on account of a death in an action based upon said section, where the com-

plainant asked judgment for a less sum, the petition did not state a cause of action under that section and an instruction directing the jury, if they should find for the plaintiff, to render a verdict for the lesser sum was error.

3. ———: Act in Derogation of Common Law: Strict Construction. The said section being in derogation of common law should, for that reason, be strictly construed so that one suing under the section must sue for the exact penalty stated (Dissenting from Marsh v. Railroad, 104 Mo. App. 557, by the Kansas City Court of Appeals).

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

REVERSED AND REMANDED AND CERTIFIED TO THE SUPREME COURT.

*Geo. W. Easley* with *Boyle, Priest & Lehmann* for appellant.

The court erred in overruling defendant's objections to the introduction of any evidence, because the petition does not disclose any cause of action under either section of the damage act. It cannot be founded on section 2864, because it does not sue for the penalty therein provided. It cannot be good at common law, because no action lies at common law for an injury resulting in death. 1 Joyce on Damages, sec. 486. It is undoubtedly the rule that in penal actions the precise penalty fixed by the statute must be sued for. Hyde v. Cogan, 2 Doug. 699, 705, 706; Read v. Stewart, 129 Mass. 410; Cole v. Groves, 134 Mass. 471; King v. Railroad, 98 Mo. 239; Philpot v. Railroad, 85 Mo. 168; Proctor v. Railroad, 64 Mo. 112; Sarazin v. Railroad, 153 Mo. 485.

*H. A. Yonge* and *Ernest E. Wood* for respondents.

The respondent could sue for and recover the sum of forty-five hundred dollars, ($4,500) in a case of this kind if they saw fit to remit the sum of five hundred dollars ($500). Marsh v. Railroad, 78 S. W. 284.

STATEMENT.—Plaintiffs sued to recover $4,500 damages for the death of their unmarried minor child, Daniel Casey, who was killed by one of the defendant's street cars. The casualty occurred April 17, 1903, after nightfall; the scene, at the intersection of Arsenal street and Broadway, a few steps west of Lyon Park, in the city of St. Louis. Daniel Casey, who was killed, was a boy nearly nine years of age and of fair intelligence. He and some other boys had been playing north of Arsenal street but had gone down to where the accident occurred, either following a hoodlum wagon or to visit the park. Some boys, including the deceased, were standing on the east side of Broadway and immediately outside of the park as the car which did the mischief, came from the south. For some reason, Daniel Casey and his brother, a lad of fourteen years, started across Broadway as the car approached, without noticing it. The testimony goes to show that Daniel Casey's attention was fixed on a south-bound car on the west track and that while gazing at that car, he stepped on the east track and stood there about ten seconds waiting for the south-bound car to pass, and while in that position was run over by the northbound car and injured so that he died. One witness accounted for the deceased waiting on the track by saying, in effect, that the two cars were coming from opposite directions and he did not know what to do. The deceased's brother John had crossed the track immediately in front of him and his testimony is that neither of them had noticed the car going northward along Broadway south of Arsenal street.

There are several specifications of negligence in the petition, among which are the alleged negligence of defendant's motorman in failing to sound the gong; the alleged negligence of the motorman in failing to keep a vigilant watch, and the alleged negligence of the motorman in operating the car at an excessive rate of speed. As will be seen, all of these specifications relate to the negligence of defendant's servants, and bring so much

of the case within the purview of section 2864, R. S. 1899 authorizing a recovery in the fixed sum of $5,000 for a wrongful death. There are also other specifications of negligence contained in the petition, to-wit, the absence of signal lights and the absence of a fender on the car, which might bring the case within the purview of section 2865, R. S. 1899, authorizing a recovery in a sum not to exceed $5,000, but those two specifications were not submitted to the jury. The specifications of negligence which were referred by the court to the jury and on which a recovery was had, are, in the first instruction, the alleged negligence of the motorman in failing to sound the gong; in the second instruction, the alleged negligence of the motorman in failing to keep a vigilant watch, and in the fourth instruction, the alleged negligence of the motorman in operating the car at an excessive rate of speed. These specifications relating to the negligence of defendant's servants in operating the car, bring the case properly within the purview of section 2864, R. S. 1899, commonly known as the second section of the damage act, which section provides that in case of death as therein specified, the proper parties specified therein may sue for and recover, and the defendant shall *forfeit and pay* for every person or passenger so dying, the sum of $5,000. The court below treated the case as coming under the purview of that section, and acting upon the theory that the plaintiffs could sue for all of the penalty named, to-wit, $5,000, or any lesser amount, as they saw fit, instructed the jury that, in the event that the finding should be for the plaintiff, the verdict should be for $4,500, the full amount sued for. Respondents treat the case in this court as coming within the purview of that section and insist that they are not compelled to sue for the $5,000 mentioned in the statute, but that they could sue for whatever amount they saw fit, not exceeding the sum of $5,000, and that the court acted properly in so directing the jury.

The principal point made in this court for a reversal of the judgment is that the action is predicated on the statute awarding a penalty of $5,000 to parents of children who are killed by a party's negligence, that exact sum must have been demanded by the plaintiffs in order to state a cause of action under the statute, and that inasmuch as the statute provides that for every such death, the defendant shall *forfeit and pay* $5,000, and that the petition in this cause seeks to recover $4,500 only, that there is no cause of action stated in the petition, and therefore the judgment must be reversed. In this connection, too, it is urged by defendant that, inasmuch as the jurisdiction of this court extends only to money demands of $4,500, exclusive of interest and costs that a suit properly brought under that section for the penalty should be for the full penal sum therein provided, so that, in event of plaintiff's recovery, an appeal might be properly had to the Supreme Court. It is urged that the amount, $4,500, demanded in this case, is an attempt to oust the Supreme Court of its appellate jurisdiction of this cause, which is not permissible; that at any rate, the court erred in peremptorily directing the jury that in event the verdict was for plaintiffs, the measure of recovery was $4,500, no more and no less.

It is argued that under the theory on which the case was tried, plaintiffs and not the statute, fixed the penal sum in which the defendant is to be mulcted for its wrongful act. The appellant insists that the sum so fixed by the statute is a penalty; that the statute itself is penal; that such statutes are to be strictly construed, and to state a cause of action thereunder the pleader must bring himself strictly within the terms of the statute, and among other things, the precise sum fixed therein must be sued for and recovered, or none at all. And from this, it will of course necessarily follow that unless the precise sum of the penalty is sued for, the case would come properly within the provisions of section 2865 and 2866, the third and fourth sections of the

damage act, and the defendant would be permitted to
be heard upon the question of the measure of damages
and the court should instruct the jury that in event of
plaintiffs' recovery, such an amount should be awarded,
not exceeding $5,000, as might be fair and just.

Replying to this, respondents cite us to the case of
Marsh v. Kansas City & Southern Ry. Co., 104 Mo. App.
577, by the Kansas City Court of Appeals, wherein this
identical question was decided adversely to appellant's
contention here.     That case, on motion of appellant,
was transferred to the Supreme Court by the Kansas
City Court of Appeals, notwithstanding the amount in-
volved was only $4,500, in order to have the question of
jurisdiction settled, as the appellant therein contented
that the Supreme Court had jurisdiction thereof for the
reason that the full penalty of $5,000 was recoverable,
if anything.     The Supreme Court remanded the cause
to the Kansas City Court of Appeals without an opinion,
on the ground, we presume, that as only $4,500 was in-
volved in the controversy, the jurisdiction of the Su-
preme Court did not attach thereto.     This remand of
course, disposed of the question of jurisdiction but did
not dispose of the question of whether a good cause of
action can be stated on the particular statute involved,
section 2864, R. S. 1899, without demanding the statu-
tory penalty.     After the cause was thus returned, the
Kansas City Court of Appeals proceeded with it to a
decision and in the course of its opinion, discussed the
question of whether the statute involved was penal in
the sense that an action on it must be for the entire pen-
alty.     The ruling was that the statute was compensatory
as well as penal.     The familiar doctrine was announced
that it was remedial or compensatory in awarding com-
pensation to the injured party for the wrongful death
of her relative, and penal in operating as a deterrent
against similar torts.     It was held that a statute is only
penal in such sense as to bring a civil action on it with-
in the rule that the full penalty must be asked, when the

statute imposes punishment for an offense committed against the State; that is, a penalty which the Executive of the State has power to pardon and which must be proceeded for in the name of the State and that therefore it was permissible for the parties suing, to sue for and recover $4,500 in said suit instead of the penal sum of $5,000.

At the last term, this court followed the Kansas City Court of Appeals in that holding and affirmed the judgment in the present case and afterwards upon motion, set that judgment aside and ordered a rehearing.

The point for decision clearly stated is, as will be seen, can the plaintiffs, seeking a judgment on the statute which creates or transmits to them a cause of action, which they had not at common law and provides that the defendant shall forfeit and pay a fixed penal sum of $5,000, sue for and recover on said statute a less amount? Upon reconsideration, this court has arrived at a different conclusion from that first entertained and that conclusion and the reasons therefor will be expressed in the opinion.

NORTONI, J. (after stating the facts).—Under the common law, in pursuance of the maxin *actio personalis moritur cum persona,* no right existed in favor of the heirs, distributees or personal representatives of a deceased person for damages for his wrongful death. The right of action which the injured person had, abated with his death and did not survive and no right of action existed in favor of those surviving him because the civil right was merged in the criminal act. [Amer. and Eng. Ency. Law (2 Ed.), 855; Cooley on Torts (2 Ed.), 307; 1 Joyce on Damages, sec. 486; Seward v. Vera Cruz, L. R. 10 App. Cases, 59-70; McNamara v. Slavens, 76 Mo. 331; Vawter v. Railway Co., 84 Mo. 679; Hennessy v. Bavarian Brew. Co., 145 Mo. 112, 46 S. W. 966; Strode v. St. Louis Transit Co., —— Mo. ——, 87 S. W. 976.]

116App—16

The unsatisfactory state of the common law with respect to the right to recover for a death due to the negligence or wrongful act, led to the passage of the statutes giving the right of recovery in such cases. The earliest of these statutes was the English Act of 1846, 9 and 10 Vict. C. 93, commonly known as Lord Campbell's act. This enactment has served as a model for all of the subsequent legislation on the subject. [8 Amer. and Eng. Ency. Law (2 Ed.), 858; Hayes et al. v. Williams, 17 Colo. 465; Cooley on Torts (2 Ed.), 308.]

The Legislature of Missouri, following the trend of the legislative wisdom so universally manifested in those jurisdictions where the common law obtains and to the end of supplying this deficiency in the common law, has provided three separate statutes, sections 2864, 2865 and 2866. By section 2865, R. S. 1899, it is provided that "Whenever the death of a person shall be caused by a wrongful act, neglect or default of another, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages . . . the person who or the corporation which would have been liable if death had not ensued shall be liable to an action," etc. etc. Section 2866 provides that a recovery for such wrongful death mentioned in the preceding section, may be had by the same parties and in the same manner as is provided in section 2864, and on the measure of recovery in such case, it provides that the jury may give such damages "not exceeding $5,000, as they may deem fair and just," with reference to the necessary injury resulting from such death to the surviving parties, who may be entitled to sue, and also having regard to such mitigating or aggravating circumstances as may have attended the wrongful act, etc. Section 2864, on the same subject on which a recovery was had in this case for $4,500, provides for the forfeit of the fixed sum of $5,000 for each wrongful death occurring as therein provided, and is as

Casey v. Transit Co.

follows:

"Whenever any person shall die from any injury resulting from or occasioned by the negligence, unskillfulness or criminal intent of any officer, servant, or employee whilst running, conducting or managing any locomotive, car or train of cars, or of any master, pilot, engineer, agent or employee whilst running, conducting or managing any steamboat, or any of the machinery thereof, or of any driver of any stage coach or other public conveyance whilst in charge of the same as a driver; and when any passenger shall die from any injury resulting from or occasioned by any defect or insufficiency in any railroad, or any part thereof, or in any locomotive or car, or in any steamboat, or in the machinery thereof or in any stage coach or other public conveyance, the corporation, individual or individuals in whose employ any such officer, agent, servant, employee, master, pilot, engineer or driver shall be at the time such injury is committed, or who owns any such railroad, locomotive, car, stage coach or other public conveyance at the time any injury is received resulting from or occasioned by any defect or insufficiency, unskilfulness, negligence or criminal intent above declared, shall forfeit and pay for every person or passenger so dying, the sum of five thousand dollars, which may be sued for and recovered: First, by the husband or wife of the deceased; or, second, if there be no husband or wife, or he or she fails to sue within six months after such death, then by the minor child or children of the deceased whether such minor child or children of the deceased be the natural born or adopted child or children of the deceased; *Provided,* that if adopted, such minor child or children shall have been duly adopted according to to the laws of adoption of the State where the person executing the deed of adoption resided at the time of such adoption; or, third, if such deceased be a minor and unmarried, whether such deceased unmarried minor be a natural born or adopted child, if such deceased un-

married minor shall have been duly adopted according to the laws of adoption of the State where the person executing the deed of adoption resided at the time of such adoption, then by the father and mother, who may join in the suit, and each shall have an equal interest in the judgment; or, if either of them be dead, then by the survivor. In suits instituted under this section, it shall be competent for the defendant, for his defense, to show that the defect or insufficiency named in this section was not a negligent defect or insufficiency and that the injury received was not the result of unskilfulness, negligence or criminal intent."

In view of what has been said, it would seem unnecessary to cite authorities to the effect that these statutes are in derogation of the common law. That they are so in derogation thereof is obvious. [2 Lewis' Sutherland Stat. Const. (2 Ed.), sec. 713; Jackson v. Railway Co., 87 Mo. 422; 8 Amer. & Eng. Ency. Law (2 Ed.), 859.]

It is true that statutes may be in part penal and in part remedial and that statutes which provide a penalty recoverable by the party aggrieved are in many cases construed remedial as well as penal and hence in dealing with such statutes the courts are called upon to make proper application of two adverse principles to some extent; that requiring strict construction on account of the penalty, and that requiring a liberal construction to prevent the mischief sought to be deterred and advance the remedy thereby given in favor of the party aggrieved. [2 Lewis' Southerland Stat. Const. (2 Ed.), sec. 532; 26 Amer. & Eng. Ency. Law (2 Ed.), 661; see also sec. 668.]

In an early case in England against the Hundred, for damages inflicted on plaintiff by a mob destroying his dwelling and furniture, it was said by Mr. Justice Buller in the King's Bench: "The law may certainly be penal in one part and remedial in another and that is

the case here." And by Mr. Justice Willes: "It may be said to be penal as to the Hundred but it is certainly remedial as to the suffered. [Hyde v. Cogan, 2 Doug. 698-705-706.] That this is the American doctrine is well sustained by all of the authorities. [Huntington v. Attrill, 146 U. S. 657.]

In full accord with this well-established doctrine that a statute may be both remedial and penal, our Supreme Court, in the later and it seems to us the better considered cases, has repeatedly held that this statute is one of that class, both remedial and penal; remedial in so far as its purpose is to provide compensation to the immediate relatives for the loss of a father, mother or unmarried minor child, and penal in so far as by its terms, it inflicts a penalty or forfeiture for every wrongful death thereunder, whether the person killed be a kind and good husband and father, of large expectancy of life and extraordinary earing capacity, or whether he be a vagabond and a curse, mean, contemptible and cruel to his family and one who, instead of providing therefor, leads the life of an indolent drone, revelling in vice and crime, consuming the sustenance of his wife and children; and penal, too, because of its object and purpose to deter and punish the wrongdoer for the wrongful death of any citizen, whether he be good or bad. The court, in King v. Missouri Pac. Ry. Co., 98 Mo. 235, 239, 11 S. W. 563 said: "That amount is allowed in the cases therein specified for a twofold purpose, first, compensation, and second, *as a penalty to protect the public against repetitions of like wrongs.*" And in the case of Philpott v. Missouri Pacific Ry. Co., 85 Mo. 164, l. c. 168, the court said: "The statute is remedial and is designed to be compensatory in part. *But it is more than this.* The case at bar demonstrates the fact that it cannot be wholly compensatory; for the amount of the recovery being fixed, as it is, *is altogether out of proportion to the value of the services of the son for the remainder of the period of his minority. The*

*law is also designed to guard and protect persons against the wrongful acts thereby prohibited.* Whether the amount awarded is denominated damages, compen-satory damages, liquidated, as was said in Coover v. Moore et al., 31 Mo. 574, or a penalty, is not material. The law, as well as being compensatory, *is of a penal and police nature,* and can, without objection, subserve both purposes at one and the same time." [Hennessy v. Bavarian Brew. Co., 145 Mo. 105-112, 46 S. W. 966.]

It is true that in an early case in this State, Coover v. Moore, 31 Mo. 574, under this same statute, it was held that from the fact that only certain persons presumed to be interested in the life of the deceased may institute an action under it and that there are large classes of persons whose lives are in no manner protected by the provisions of the act, it appears that the sum which may be recovered is not intended as a penalty but as compensatory damages liquidated by the statute. It seems to us, however, that our court in later cases, has departed from the doctrine of that case, in fact, there can be no doubt about it. That our Supreme Court has departed from that doctrine is manifest not only from the two cases above cited (King v. Railway and Philpott v. Railway Co., supra), but in all the later cases and it seems to us that the later cases on the subject are sound and in accord with the weight of authority the country over. In fact, the reference to this case in Philpott v. Railway Co., 85 Mo. 168, is couched in such language as would seem to shake its authority. As was said by the learned judge in Marshall v. Wabash Ry. Co., 46 Fed. 1. c. 270-271 : "It is true that the court in Coover v. Moore said that the damages are compensatory. So they may be in certain cases, and in some cases less than full compensation. But where the plaintiff is not required to offer any evidence proving damages, and the defendant is not permitted to offer any evidence disproving damages, and the recovery is to be one fixed sum in every case, I cannot understand how the statute under

which that is done, can be regarded as providing compensation merely and not penal." The doctrine of our later cases on the question is certainly correct and sound in principle.

There certainly can be no room for controversy over the proposition that this statute is not only penal but it is highly penal. It is true it is compensatory as well in many cases. Its very wording is sufficient to impress us with the intention of the legislature to levy a penalty, for it provides that the party *shall forfeit and pay* for every such death. The word "forfeit" has a well-established meaning in the law. "To forfeit," is "to divest or to suffer divestiture of property without compensation in consequence of a default or offense, also to pay money as a mulct, or for a default or wrong." [Anderson's Law Dictionary.]"Forfeiture has been defined as an involuntary transfer of a sum of money or property imposed by way of punishment for the commission of an offense against the law." [Anglea v. Com., 10 Graft. (Va.) 696.] The term is also used synonymously with "penalty." [13 Amer. & Eng. Ency. Law (2 Ed.) 1074.] The primary use of the word forfeit is to lose, and this is also its legal meaning. To forfeit a sum of money means to lose the right to it in favor of another party. [Eakin v. Scott, 70 Tex. 445.] 13 Amer. and Eng. Ency. Law (2 Ed.), 54, treats of forfeitures, fines and penalties under a common head, saying it is deemed proper to so treat them as they are all included under the generic head "penalty." But aside from this language employed in the act, which means divesting a sum from one party without his consent because of a wrong against the law, and transferring it to another the statute fixes an absolute sum as the measure of damage and authorizes a recovery of $5,000 absolutely without the proof of any damages whatever and the defendant is thereby precluded from introducing any evidence disproving damages. And again, while this statute is partly remedial, it might be in many cases, and no doubt is, purely

penal, as in a case where the injured party was a burden to his family and for that reason no element of compensation could enter into the case. A recovery in such case no doubt would be strictly penal.

The Supreme Court of Kansas, passing upon the New Mexico statute, in which the portion material here is identical with that of Missouri, holds it to be highly penal and to such an extent that it has no extra-territorial force and a recovery thereon could not be had in that state. [Dale v. Ry. Co., 57 Kas. 601. See also Oates v. Railway Co., 104 Mo. 514, 16 S. W. 487; Ashe v. Railway Co., 19 Atl. (Md.) 643; Vawter v. Railway Co., 84 Mo. 679; McGinnis v. Mo. Car. & Foundry Co., 174 Mo. 225, 73 S. W. 586.]

The circuit court of the United States for the southern district of Ohio held the same of the Missouri statute and delivered a very interesting and instructive opinion thereon. [Marshall v. Railway Co., 46 Fed. 269.] The Supreme Court of Vermont held the same in a case before it on a statute of Massachusetts, awarding a recovery for not less than $500 or more than $5,000. The court there said: "And it is to be noticed that the giving of a fixed sum excludes a consideration of the degree of culpability as well as of the loss sustained. We think the *rule given* for determining the *unascertained part of the recovery* is the *controlling feature* of the statute." [Adams, Admx., v. Railway Co., 67 Vt. 76 and 81. See also 8 Amer. & Eng. Ency. Law (2 Ed.), 880.]

The American & English Encyclopedia of Law, vol. 8 (2 Ed.), 931, recites the substance of the Missouri statute and in comment thereon, says: "This is a penal statute, and is therefore to be construed strictly in so far as it fixes the measure of recovery." That this statute is regarded and treated as penal as well as remedial is sustained by the following cases: Culbertson v. Street Railway Co., 140 Mo. 62, 36 S. W. 834; Senn v. Railway Co., 135 Mo. 519, 36 S. W. 367; s. c., 124 Mo. 625, 28 S. W. 66; Weller v. Railway Co., 120 Mo. 654, 23 S. W. 1061;

55 S. W. 5232; Schlereth v. Railway Co., 115 Mo. 102, 21 S. W. 1110; Lynch v. Street Railway Co., 112 Mo. 440, 20 S. W. 642; Oates v. Railway Co., 104 Mo. 514, 16 S. W. 487; Beck v. Railway Co., 102 Mo. 544, 13 S. W. 1053; King v. Railway Co., 98 Mo. 235; 11 S. W. 563; Carroll v. Railway Co., 88 Mo. 239; Philpott v. Railway Co., 85 Mo. 164; Vawter v. Railway, 84 Mo. 685; Proctor v. Railway Co., 64 Mo. 112; also dissenting opinion of Judge HENRY, 131, 132; 26 Amer. & Eng. Ency. Law, (2 Ed.), 88.

It being established beyond peradventure that the statute under consideration is highly penal as well as compensatory or remedial, the rule is well established that such portions of it as confer a remedy are to be liberally construed in advancement of the remedy and such portions of it as impose a penalty are to be strictly construed in order that the penalty shall be sustained and the statute shall be operative and in full force to the end that the mischief which it seeks to prevent and punish shall be abated or minimized, to say the least. 2 Lewis' Sutherland Statory Construction (2 Ed.), sec. 337, says: "Penal statutes are those by which punishments are imposed for transgressions of the law. They are construed strictly and more or less so according to the severity of the penalty. . . . But the provisions that enforce the wrong for which a penalty is provided, and those which define the punishment, are penal in their character and are construed accordingly. . . . And the same statute may be remedial for certain purposes, and liberally construed therefor, and at the same time *be of such a nature, and operate with such harshness upon a class of offenders subject to it, that they are entitled to invoke the rule of strict costruction.*" Here we have a statute which indeed operates with great harshness upon the offender. It imposes a forfeiture of his goods to the extent of $5,000 and that too, without evidence of pecuniary loss on the part of the party claiming to be aggrieved by the alleged wrongful act and precludes the party com-

plained against from his day in court on the amount of
the recovery.   Indeed, it would almost seem to overturn
the constitutional guaranty of right of trial by jury and
on this feature of the case in many instances, no doubt
amounts almost to a confiscation of property, and ex-
cept for the police power of the State underlying it, no
doubt it would be so declared.   It can be justified only as
a police regulation and the power of the State in that be-
half to provide drastic measures to the end of preventing
or deterring the commission of wrongs which are so
great as to be deemed of a public nature, and it seems
that upon both principle and authority, it is a case call-
ing for strict construction if such a case can be presented
at the bar of public justice.   It is in part to meet just
such situations as this that the familiar rule of law re-
quiring strict construction of penal statutes so long
since found its way into our system of jurisprudence.
Indeed, it is said, and we think with much propriety,
that the rule itself is founded upon the respect of the
law for the rights of individuals and upon the plain
principle that the power of punishment is vested in the
Legislature and not in the judicial departments of the
government.   It is unnecessary to multiply authorities
on a proposition so elemental.   [26 Amer. & Eng. Ency.
Law (2 Ed.), 658; 2 Lewis' Sutherland Stat. Const. (2
Ed.), sec. 520; Town of Pacific v. Seifert, 79 Mo. 210;
Ellis v. Whitelock, 10 Mo. 781.]

The only exception which we have been able to find
to this rule requiring strict construction of statutes
which are in their nature penal, is in the case of a stat-
ute which provides for more than actual compensation,
such as double or treble recovery for the commission of
some wrong which would have given the party injured
a cause of action at common law for actual compensa-
tion, such as trespass, negligence and other common
law torts.   In such cases, the statute allows to the party
no cause of action for "a newly-created offense," as men-
tioned in Riddick v. Governor, 1 Mo. 104; Utley v. Hill,

155 Mo. 274, 55 S. W. 1091; Holwerson v. Railway Co., 157 Mo. 251, 57 S. W. 770; 26 Amer. & Eng. Enc. Law (2 Ed.), sec. 668, nor a new cause of action at all for that manner, nor does it transmit to him a right to sue on a cause of action which had no existence at common law. The cause of action which he had was given him in the first instance by the common law and the statute merely adds to or accumulates the measure of his recovery. These additional damages awarded by the statute are mentioned in some of the old cases as "accumulative damages." [Reed v. Chelmsford, 16 Pick. 128, 132; Woodgate v. Knatchbull, 2 T. R. 148-154; Huntington v. Attrill, 146 U. S. 1. c. 668.] They are damages engrafted on a common law recovery by the statute in the nature of a penalty and statutes of this nature which merely accumulate the measure of recovery in actions otherwise primarily existing at common law, are not regarded as penal in the sense that the rule of strict construction applies to them with all its force. [Ellis v. Whitelock, 10 Mo. 78; Phillips v. Smith, 1 Strange, 137 Cro. Jac. 113.] Such damages are also denominated as "enhanced damages." [Reed v. Northfield, 13 Pick. 401, and Huntington v. Attrill, 146 U. S. 668.]

Our Supreme Court on this question said, speaking through Judge Scott, than whom no clearer lawyer nor sounder judge ever graced the bench of this State: "The rule which requires penal statutes to be construed strictly is not applicable here for it is a principle that when a party is entitled to an action at common law, and an act of the Legislature comes and gives him an increase of damages, that is not to be taken as a penal statute. [Phillips v. Smith, 1 Strange, 137; Cro. Jac. 413.] Moreover it would seem that the operation of this rule merely restrains such a construction as increases the severity of the punishment." [Ellis v. Whitelock, 10 Mo. 783.] See also Read v. Chelmsford, supra, where the court said: "It has been held in many instances that where the statute gives accumulative

damages to the party aggrieved, it is not a penal action."
[Woodgate v. Knatchbull, 2 T. R. 148-154.] The cause
of action here being a wrongful death for which no right
of recovery existed at common law, this rule of construc-
tion cannot be invoked in aid thereof as the damages al-
lowed find their very origin in the statute and in no
sense can they be accumulative for there exists no basic
common law right of recovery on which to accumulate.
In treating of the enforcement of a right unknown at
common law, this rule is clearly recognized in Ross v.
Jones, 89 U. S. 576, and Campbellsville Lumber Co. v.
Hubbert, 50 U. S. C. C. A. 435; Lease v. Vance, 28 Iowa
509.

In observance of this rule, it is obvious from what
has been said in the cases that our Supreme Court has
considered this statute as penal and one requiring a
strict construction. While this identical question has
never been before that court, reference to the following
cases will clearly demonstrate that the court has looked
upon it as a statute fixing a penalty for a recovery of
which the suing party must bring himself strictly within
its provisions and among other things, demand and re-
cover the precise amount of the penal sum therein pro-
vided. The court, in Proctor v. Railway, 64 Mo. 112,
while discussing the proposition of whether or not the
words "any person" employed in this statute included
the right of recovery for the death of a fellow-servant
who came to his death by the negligence of his coservant,
said, through Judge NORTON in the majority opinion:

"If the statute should be thus read, the representa-
tives of such a person as is described in section 3, dying
from an injury received while the railroad was being
operated, either from the carelessness of the servants en-
gaged in operating it, or, in case of a passenger, from an
injury received because of defective road machinery,
would be entitled to recover $5,000 as damages liqui-
dated by the terms of the act, the only difference be-
tween sections 2 and 3 being that when the death is oc-

casioned by any of the means specified in section 2, the representative to whom the right of action is transmitted shall recover $5,000, *no more and no less;* whereas, under section 3 and 4, the representative to whom the right of action is transmitted may recover from one cent to $5,000. To the one class of transmitted rights, *the law absolutely fixes the amount at* $5,000. In the other, the amount of damages is left to the discretion of the jury, to be fixed at any sum not exceeding $5,000, according to the circumstances of the case."

Judge HENRY, in the dissenting opinion in the same case, while dissenting on the main question, used the following language clearly expressing his views on the penal nature of the statute:

"Another circumstance showing the penal character of the second section (2864, R. S. 1899 of Missouri) is that it fixes the amount of recovery inflexibly at $5,000."

Again he says:

"A man may be a vagabond a curse instead of a comfort to his family, consuming the earnings of his wife and children in debauchery, and disgracing them by his dissipation, yet, if killed under the circumstances bringing the case under the second section (2864) his representatives may recover $5,000 and the jury can give no less."

And still again he says:

"If, on the other hand, the person killed be an honor and a comfort to his family, earning thousands by his industry and spending it liberally for their benefit, his representatives can recover but $5,000 while under the third and fourth sections the jury can consider the character of the deceased in determining what amount to allow within the maximum."

The court, speaking through Judge McFARLANE, in Senn v. Southern Railway Company, 124 Mo. 625, 28 S. W. 66, said: "The party guilty of the wrongful act or neglect is made liable by the statute to 'forfeit and pay'

for such death to the person entitled to sue therefor in the sum of $5,000. The amount of the damage is thus fixed and no *greater or less amount can be recovered.*" [See also Culbertson v. Railway Co., 140 Mo., 62, 36 S. W. 834; Senn v. Railway Co., 135 Mo. 519, 36 S. W. 367; Weller v. Railway Co., 120 Mo. 654, 23 S. W. 1061; 25 S. W. 532; Schlereth v. Railway Co., 115 Mo. 102, 21 S. W. 1110; Lynch v. Street Railway Co., 112 Mo. 440, 20 S. W. 642; Oates v. Railway Co., 104 Mo. 517, 16 S. W. 487; Becke v. Railway Co., 102 Mo. 544, 13 S. W. 1053; Rafferty v. Railway Co., 15 Mo. App. 559; 8 Amer. & Eng. Ency. Law (2 Ed.), 931.]

The rule of strict construction, pays homage only to that cardinal rule in the construction of all statutes, that the true intention of the lawmakers should be ascertained and carried out. The invocation of this rule, however, can only argue in favor of the penal nature of this statute inasmuch as it is manifest from the use of the word "forfeiture" by the Legislature together with the consideration that no evidence is to be heard and no day in court to be had on the amount of plaintiffs' damage and the measure of their recovery, that it was intended that the amount named in the statute should be a penalty inflicted as a punishment upon the person guilty of the wrongs therein sought to be prevented. Applying, then, the rule of strict construction to the penal feature of this statute, the conclusion is that the penal sum therein fixed at $5,000 means $5,000. It does not mean $4,500 no more than it means $450 or $45. Indeed, it seems that the Legislature intended that the perpetrator of the mischief sought to be prevented should pay the full penalty levied and did not intend that the private citizen might fritter away that penalty provided by virtue of the authority of the police power of the State for the purpose of preventing wrongs, so that conditions might arise where one offender would pay $5,000 and another be permitted to pay $4,500 and another a much less sum, as might suit the convenience of

the party putting the statute into operation by his suit. It is written that the rule of srict construction applies to this section. 26 Amer. & Eng. Ency. Law (2 Ed.), 659, says: "The rule under consideration applies not only to statutes relating to criminal offenses, but also to all statutes which impose as punishment any penalties, pecuniary or otherwise, or forfeiture of money or other property or of vested rights, or provide for the recovery of damages beyond just compensation to the party injured, whether such penalties, forfeitures or damages are to be enforced and recovered at the suit of the State or of a private individual." [See also 2 Lewis' Southerland Stat. Const. (2 Ed.), sec. 531-532; Farmers & Mech. Bank v. Dearing, 91 U. S. 29; Schooner Bolina, 1 Gall. U. S. 75; and the great array of authorities cited in note 5, p. 559, 26 Amer. & Eng. Ency. Law, (2 Ed.); Adams v. Fitchburg Ry. Co., 67 Vt. 76; McGinnis v. Mo. Car & Foundry Co., 174 Mo. 225, 73 S. W. 586.]

The doctrine of the Missouri Supreme Court on this question was clearly stated in Riddick v. Governor, 1 Mo. 104, to be, "It is an incontrovertible maxim of law, that a statute, imposing a penalty for a new created offense, or for a breach of duty, and defining the principal mode in which, and before what tribunal the penalty shall be recoverable, must be strictly pursued." This doctrine has been adhered to in all of the cases so far as we can ascertain from diligent research and is the sound law on the subject in accord with the authorities of other jurisdictions. [See also Utley v. Hill, 155 Mo. l. c. 274, 55 S. W. 1091; Parish v. Railway Co., 63 Mo. 284; Eads v. Orcutt et al., 79 Mo. App. 511; People Ry. Co. v. Grand Avenue Ry. Co., 149 Mo. 245-253, 50 S. W. 829.]

The authority for the Legislature to provide a statute thus penal and the authority for the courts to sustain and enforce its penalty is to be found in the police powers of the State and rests upon broad considerations of public policy in which the State is an interested party

to the end that those operating dangerous conveyances of a public nature, usually, under franchise from governmental power to serve the public, may be required and eforced to exercise a degree of care commensurate with the undertaking, and its penal provisions are purposed to inflict punishment for the dereliction of this duty. That the authority for the penal provisions of the enactment is the police power of the State is beyond question. [Humes v. Railway Co., 82 Mo. 221; Missouri Pacific Ry. Co. v. Humes, 115 U. S. 521-522; Philpott v. Railway Co., 85 Mo. 164.]

The State, then, is a interested party, notwithstanding the fact that the amount of the penalty is given to the bereaved relatives on the theory of compensation, for the State can make whatever disposition of its penalties as to it seems proper and the fact that it presents the penalty to the aggrieved party upon their assuming to put the law into operation and collect it, cannot influence the important question involved one way or another. [Missouri Pacific Ry. Co. v. Humes, 15 U. S. 523.] As said, the State is an interested party; that is, in so far as the amount of the penalty is concerned, to see that such penalty which it had thus provided for the better police regulation of the State be maintained in its full measure and certainly cannot suffer the mover of the law in that behalf to thus play and toy with its forfeitures and penalties provided. If such is permissible, then it would be competent and proper for the party to sue for $2,000 instead of the penal sum, or if, perchance, it better subserves his convenience, to sue for the pitiful sum of $250 or even $1.00 in the court of a justice of the peace, and thus annihilate the penal feature entirely. But it is not necessary to enlarge upon this score as we take it for granted that none will seriously contend that the State's penalties provided under the police powers can thus be frittered away, whatever might be said on another question.

A second but equally sound reason why the stat-

ute under consideration should be strictly construed, is that it is a statute in derogation of the common law and if it does not create a new cause of action, it at least, under the uniform authorities from Proctor v. Railway Co., 64 Mo. 112; Gray v. McDonald, 104 Mo. 311, 16 S. W. 398 and other cases as late as Strode v. Transit Co., —— Mo. ——, 87 S. W. 976, transmits to the parties named by the statute, a cause of action which neither they nor any other persons had at common law, and such statutes are always strictly construed and especially is this true of Lord Campbell's act and other wrongful death enactments. [2 Lewis' Sutherland Stat. Const. (2 Ed.), sec. 710; Railway Co. v. Lilly, 90 Tenn. 563.] Our Supreme Court has passed upon this identical statute and so held in Jackson v. Railway Co., 87 Mo. 422. [26 Amer. & Eng. Ency. Law (2 Ed.), 662; Seward v. The Vera Cruz, L. R. 10 App. Cases, 59.]

Speaking of a statute which is manifestly in derogation of the common law, our Supreme Court has said: "It cannot be said that one condition is more important than another." [Sarazin v. Union Railway Co., 153 Mo. 485, 55 S. W. 92; citing Tyler v. Reynolds, 53 Ia. 146; Shearer v. Weaver, 56 Ia. 578; Keegan v. Geraghty, 101 Ill. 26; Ferguson v. Jones, 17 Ore. 204.]

In line with this doctrine of strict costruction and in view of the fact that such statutes are in derogation of the common law, it is the universal rule adhered to by the courts that in actions under these statutes for the death of a person caused by the wrongful act of another, being purely of statutory origin, the person seeking to maintain such action must allege and prove such facts as bring him strictly within the provisions of the statute, and this is true to the extent that the party suing under the statute, must allege and prove the existence of certain beneficiaries or the non-existence of other persons in accordance with its terms and where the statute imposes certain conditions precedent, they

become a material part of the plaintiff's case and it is incumbent upon him to allege and prove that these conditions have been satisfied. [3 Elliot on Railways, sec. 1359; 8 Amer. & Eng. Ency. Law (2 Ed.), 887; 3 Wood's Railway Law, sec. 413; 2 Lewis' Sutherland Stat. Const., sec. 710; Barker v. Railway, 91 Mo. 86, 14 S. W. 280; McNamara v. Slavin, 76 Mo. 331; Coover v. Moore, 31 Mo. 574; Sparks v. Railway Co., 31 Mo. App. 111; Galveston, etc., Railway Co. v. LaGierse, 51 Tex. 189; Hays v. Phelan, 4 Hun N. Y. 733; Telfer v. Railway Co., 30 N. J. L. 188-209; Gilbert v. Bone, 79 Ill. 341; Edwards v. Hill, 11 Ill. 23; Erlinger v. Boneau, 51 Ill. 95.] And this is especially true with regard to penal statutes of all classes. [Benealleck v. People, 31 Mich. 200; U. S. v. Morin, 4 Biss. U. S. 97; People v. Brooks, 4 Den. N. Y. 469; Lee v. Clark, 2 East. 333; Peabody v. Hoyt,10 Mass. Rep. 37; Nichols v. Squire, 5 Pick. (Mass.) 168; Gilbert v. Bone, 79 Ill. 341.] It has therefore been held in accord with this doctrine of strict construction and it is the well-founded rule in that behalf, that in suits on penal statutes in civil actions as well as otherwise, when the penalty sought to be recovered is given and fixed by the statute in amount, the precise and exact sum so fixed by the statute must be alleged in the declaration. [16 Ency. Pl. & Pr., 279.]

In the case of Dowd v. Seawell, 3 Dev. N. C. 185-188, the court said: "I conclude, therefore, that wherever the statute gives a certain sum *in numero,* that exact sum must be demanded; else it cannot be taken to be the penalty given by that statute." And again, in Duffy v. Averitt, 5 Ired. N. C. 455-460: "There can be no doubt that when a statute gives as a penalty a sum certain the declaration must claim that precise sum, and the recovery be accordingly; otherwise there would be a variance between the pleadings and evidence and verdict." See also Cunningham v. Bennett, L. Geo. L. C. B. reported by Mr. Justice Buller in Nisi Prius (7 Ed.), 196B. And in a Missouri case, decided by this court in 1884, where

under this identical statute the jury disregard the instruction of the court and returned a verdict for $2,500, it was held that such verdict was not responsive, and in fact, was forbidden by the statute itself, and therefore could not be sustained. In this case, Rafferty v. Railway Co., 15 Mo. App. 559, 1. c. 564, the court said: "How then can a verdict which is not only defective, but such a verdict as the jury is by law forbidden to render, support a judgment? It is only by force of the statute that the surviving relatives have their action, or any civil remedy, for the death of the victim. The statute which gives the remedy prescribes that the damages shall be $5,000, *no more and no less.* The verdict certainly will not support a judgment for defendant; and it is difficult to see what warrant can be found in the pleadings, evidence, and verdict for a judgment which no court in Missouri is authorized to enter upon any finding of injuries sustained under the provisions of the section of the damage act under which this suit was brought and this recovery had."

So we find the doctrine of strict procedure pervades our law from its earliest history, in cases arising on penal statutes, also upon statutes in derogation of the common law, and in furtherance of this doctrine, it has many times been judicially determined in actions for specific penalties that the amount found by the jury or adjudged by the court must be the precise amount fixed by the statute and neither more nor less than such amount, else it is not the penalty sued for and the statute can have no application in supplying the measure of recovery, there being in such cases no evidence of actual pecuniary loss to sustain the measure of recovery. The verdict or judgment can only be supported and repose upon the fixed statutory penalty in lieu thereof. [16 Amer. & Eng. Ency. Law, 300; Albright v. Tapscott, 8 Jones L. R. (N. C.) 473; Smith v. Western Union Tel. Co., 57 Mo. App. 59; Kendall v. Western Union Tel. Co., 56 Mo. App. 192; Canastota etc. Plank Road Co. v. Park-

ill, 50 Barb. (N. Y.) 601; Rafferty v. Railway Co., 15 Mo. App. 559; Broadwell v. Conger, 2 N. J. L. 153, *211; Steelman v. Bolton, 2 N. J. L. 233; Adam v. Scull, 2 N. J. L. 543, *745; Scudder v. Bloomfield et al., 2 N. J. L. 690, *951; Memphis v. Schade, 12 Tenn. 579; Richey v. Shannon, 2 Rawl. Rep. (Pa.) 197; Mack v. Mills, 9 Mont. Co. Rep. (Pa.) 196.]

From a careful consideration of these fundamental principles and well-founded rules, it seems clear to us beyond cavil of controversy that one suing under the penal section of our statute for a wrongful death must not only bring his case within the provisions of that section by otherwise strict averment and proof but he must as well declare for and seek to recover the precise or full measure of the penalty therein provided, and from this it necessarily follows that in the case at bar, the petition fails to state a cause of action under that section. The three specifications of negligence contained in the petition, however, which were by the court referred to the jury, were such as brought the case within that section had the petition been otherwise sufficient and inasmuch as the trial judge, for this reason, treated the case as coming properly under the penal section and peremptorily directed the jury that in the event of their finding for respondents, the verdict must be for the full amount sued for, $4,500, the judgment cannot be permitted to stand.

Our Supreme court, in Proctor v. H. & St. J. Ry. Co., 64 Mo. 112, in construing this penal section, held that the words "any person" therein employed did not operate to include and give the right of action for the death of a fellow-servant brought about by the negligence of a coservant; that the section under consideration being parcel of the act on this subject, of which sections 2865 and 2866 are also a part, was *in pari materia* and should be so construed and read together thereunder in arriving at the true intent of the Legislature. The result of that decision was that Shultz v. Railway Co., 36 Mo. 18, was

overruled and the reasoning in the minority opinion in Connor v. Railway Co., 59 Mo. 285, adopted. The construction then placed upon the intent of the Legislature was that no new cause of action was created thereby but that it was intended only to "transmit" to the widow the right of action which her husband would have had had death not ensued from his injuries, as the husband could have had no cause of action for injuries inflicted by the negligence of his fellow-servant under the then state of the law, had he lived, then none was transmitted to his widow thereby. In short, it was held that a cause of action under this section was transmitted when death resulted from the derelictions therein mentioned only under the same circumstances as it was transmitted in the next succeeding section, which, by its very wording, confers no right to sue, except when the party deceased might have sued had he survived his injuries. Therefore from this ruling, which has been adhered to in all of the cases up to and including the late cases of Strode v. Transit Co. (Mo.), 87 S. W. 976, and Hennessy v. Bavarian Brewing Co., 145 Mo. 104-112, 46 S. W. 966, and Gray v. McDonald, 104 Mo. 311, 16 S. W. 398, it is obvious that the Legislature intended to impose the full penalty for the death inflicted as a result of any of the negligent acts under the penal section mentioned. It cannot be presumed nor can we discern from the language, context, purport and the evident intent of this section, nor of all the sections together, in view of these decisions, that it was intended to provide cumulative remedies for the wrongful death for no purpose whatever. A party aggrieved by the wrongful death, strictly under the penal section, can, if he sees fit, sue for and recover under the third and fourth sections as well as under the penal section and his recovery would be not exceeding $5,000, as might be fair and just. Conceding this to be true, for it is, the Legislature then, by that general enactment, had provided all necessary legislation on the subject, if it was intended that the party suing

should in part control the amount of the recovery by demanding a lesser sum in his petition or any sum that he sees fit, not exceeding $5,000, or that the jury should in part so control it by allowing any sum that to it seemed proper, or that the party demanded, not exceeding $5,000. If this was intended, then why was the penal statute, section 2864, enacted at all? It could confer no remedy other than that which was given by the succeeding sections. So far as the remedy is concerned, ample provision was made therefor in the succeeding sections and no further legislation on the subject was necessary at all unless it was the purpose and intent of the Legislature to say that when death results from ordinary negligence or an ordinary wrongful act, the party aggrieved could recover not exceeding $5,000. But in this class of negligence cases, liable to arise frequently in the conduct of the business of common carriers for hire, which are quasi-public, in as much as the right to carry on their business is usually dependent upon the public grant or franchise and the success or failure of their venture dependent exclusively upon the public patronage, it was deemed expedient that an extraordinary rule should be provided as to them to the end of enforcing care and circumspection in the conduct of their business with the public, therefore the penalty was provided. For these considerations alone, it seems clear to us that the Legislature intended to affix this penalty for the purpose indicated and that by this particular statute when construed with the other, it is manifest it could have intended nothing else. We must give to the act some meaning and none other can be fitted to it. The Legislature then, having so clearly expressed its purpose, it would be in our opinion, as much an invasion of the legislative authority of the State for the courts to thus permit a private citizen to remit any part of this, the State's punishment, as it would be to permit a jury to render a verdict on proper pleadings and proof for an amount either less or greater than the penal sum.

Even at the expense of prolonging this opinion, it is deemed not improper at this point to particularly notice the case of Marsh v. Railway, 104 Mo. App. 577, 78 S. W. 284, decided by the Kansas City Court of Appeals and relied upon here by respondents. Notwithstanding the exceedingly high regard and esteem we entertain for that court as well as the respect so universally accorded by this and other courts to the very great authority of its adjudications, moved and actuated solely by that sense of duty appurtenant always to the judicial office, we are constrained to point out what we deem to be the unsound reasoning which culminated in the error of that opinion. The court said, at page 584, that the "statute of Illinois fixed a penalty of $300 in favor of parents for issuing a marriage license without the consent of the parents, 64 Ill. 518, and yet it was held that a new trial could be had on motion of plaintiffs as in ordinary civil actions, Gilbert v. Bone, 79 Ill. 341." With all due respect, we are unable to observe how the fact that a new trial could be granted plaintiff in such case could influence the question herein involved. The action is civil in its nature and no question of the life or liberty of a citizen being involved, there could arise no question of former jeopardy and no reason can be seen under such circumstances why a new trial should not be awarded therein. In our opinion the Illinois case is entirely beside the question. Edwards v. Brown, 67 Mo. 377, which was a suit by the parents on the liquor statute for the penalty of $50 for selling liquor to a minor son, is also cited and relied on as supporting the doctrine that the statute there sued under was not penal. It may be observed, first, that that case was a suit bottomed on pleadings properly praying for a $50 penalty under a statute awarding a $50 penalty and nothing directing the court's attention to the point involved in this case was in that record. The only questions there decided were, as will be observed by close reading, first, that the action was not a

*qui tam* action, and second, that the plaintiff was not an "informer" within the meaning of that term as it was employed in its common law sense in the statute requiring security for costs in *qui tam* actions and actions by an "informer" and there is nothing in that opinion which conflicts with the doctrine announcing in this. At page 585 in the Marsh case, the court said, in speaking of actions on a statute not strictly penal, that is, on statutes which have a remedial feature: "The injured party may, at his election, recover all or any part of what may be allowed him. Among such statutes are those allowing double damages against railways when an injury is done to stock at a point where the track was required to be fenced. [Hume v. Railway, 115 U. S. 512.] And where double damages are given against a town for an injury on defective walks. [Read v. Chelmsford, 16 Pick. 128; Reed v. Northfield, 13 Pick. 94.] And where double and treble damages are given for specific trespasses. [Blewett v. Smith, 74 Mo. 404.] In each of these the penalty becomes a fixed sum under the statute the moment the actual damage is ascertained, and yet no one would think that the injured party must demand it all, or else lose all." The cases there cited are of a class not in point here and the principle controlling their decision forms a false premise for the reasoning predicated thereon and the conclusions reached therefrom, inasmuch as each of those cases belong to that class where the party had an action at common law for the wrong suffered and the statute gave him no new cause of action for the penalty nor a cause of action for a "new created offense" but awarded him only enhanced or accumulative damages on a right of action which existed in his favor at common law. And as said by Judge SCOTT in Whitelock v. Ellis, 10 Mo. 783, the rule which requires penal statutes to be strictly construed, is not applicable to them for "they are not to be taken as penal statutes." As said in Woodgate v. Knatchbull, 2 T. R. 154 and in Read v. Chelmsford, 16 Pick. 132, which are relied on by the Kansas

City Court of Appeals in the Marsh case: "It has been held in many instances that where the statute gives accumulative damages to the party grieved,it is not a penal action." Indeed, it appears to us upon careful reading and reflection, that the Kansas City Court of Appeals in the Marsh case overlooked the recognition of this very principle so clearly stated by Judge SCOTT, in its application of the case of Reed v. Northfield, 13 Pick. 99. In that case, at page 99, the court clearly held that the rule of strict construction and strict procedure obtained in all cases of indictment or information "or in actions of debt or *on the case for penalties where the same strictness is required, and when the statute gives a penalty and the thing sued for is pursued as a penalty although the right to sue is given only to the party grieved, and even though the whole penalty when recovered, shall go to the party grieved.'* The rule there announced has specific application to this case for here "the thing sued for is pursued *as a penalty,"* for the very good reason that the right of these parties to sue at all did not exist at common law and if we disrobe the action of the statutory penalty, there is naught remaining to pursue under this statute. The court in Reed v. Northfield, supra, continues its discussion and holds in substance that as the case there in decision was not one in which the "thing sued for was pursued as a penalty" but was an action to recover for injuries received in the highway on account of the negligence of the town of Northfield, the damages recovered under the statute on the common law right were enhanced or accumulative damages only and the statute allowing such recovery was not necessarily penal in the sense that it was necessary for plaintiff to conclude his declaration *contra formam statuti,* the inference clearly being that if the suit were one pursuing the penalty only, as where no primary right of action existed at common law, then it would be necessary for the declaration to conclude *contra formam statuti.* This is the doctrine also of Read v. Chelmsford, 16 Pick.

128, 131, where it is said great strictness is required in pleading on penal actions and "if this were a penal action the current of authorities would support the objection." That is, that the declaration should conclude *contra formam statuti.* The distinction made in each of these cases was that the action was not one where the thing sued for was pursued as a penalty, inasmuch as the right to sue existed at common law and the penal feature of the statute served no other purpose than to accumulate or enhance the damages.

The learned judge of the Kansas City Court of Appeals cites Dennick v. Railway, 103 U. S. 11, to the effect that the statute here is not penal in the sense that the courts of foreign states will decline to enforce it and statutes of its class. On this proposition it is to be noted that in the Dennick case, the statute of the State of New Jersey where the cause of action arose, is set out at page twelve and amounts to the same as the third section of our damage act. It only pretends to transmit the cause of action without the highly penal feature contained in the statute under consideration in this case. And further, it appears in the opinion in that case, (pages 20 and 21) that the laws of the State of New Jersey in which the deceased met his death, and the State of New York, in which the action was instituted, were identical, authorizing a recovery by the same representatives for the same distribution, so that case could have no application here. It is said in the opinion, however, that the question is one which the state courts must settle for themselves upon their respective statutes. And the Missouri court has settled this question along with the courts of Kansas, Maryland and many other States cited supra to the effect that the statute has no extraterritorial force whatever, and where sued upon in a foreign state, a recovery can be had thereon only upon principles of comity between the States having like statutes. In Vawter v. Mo. Pac. Ry. Co., 84 Mo. 679 and McGinnis v. Mo. Car & Fdry. Co., 174 Mo. 235, 73 S. W.

586, our Supreme Court considered the Dennick case supra, and repudiated its doctrine. It is also said in the Marsh case that it is common practice for suits under statutes to be removed from the State to the Federal Courts. Indeed, this proposition is true. Such removals are frequently had on the ground of diverse citizenship, as provided by the act of Congress, Aug. 13, 1888, 25 St. 435; U. S. Compiled Stat. vol. 1, p. 510, sec. 3. But it is also true that when causes are so removed, they are lodged in the Federal courts within the State from whose courts the removal was had and proceeded with therein in accord with the statutes of the State from whence the cause was removed and this certainly cannot influence the consideration of the question at bar one way or another. In such case no question of the extraterritorial force of the statute is involved. [Kowalski v. Ry. Co., 84 Fed. 586; Hartford Fire Ins. Co. v. Ry. Co., 175 U. S. 91; 18 Ency. Pl. & Pr.; 261.]

We have examined with much interest the elaborate and interesting opinion of Mr. Justice Gray in Huntington v. Attrill, 146 U. S. 657, cited and relied upon by the Kansas City Court of Appeals and cannot appreciate the forceful application of its doctrine to the question here in judgment. That was a case wherein the plaintiff, a creditor of an insolvent and defunct New York corporation had recovered in the Supreme Court of New York a judgment for a sum exceeding $100,000 against defendant who was a director of such corporation under a statute of that State rendering a director of a corporation liable for the full amount of the stock held by such director if such director should sign and make oath to and cause to be recorded a certificate falsely stating that the whole of the capital stock had been paid in when in fact it had not. On this judgment plaintiff filed his bill in equity in a Maryland court, pleading said judgment and the penal statute of New York under which it had been recovered, praying the court to declare certain transfers of stock in a gas company in Baltimore as in

fraud of the plaintiff and subject the same to the payment of his judgment debt. On demurrer to the bill, the laws of New York were by stipulation submitted for the consideration of the court and the Court of Appeals of Maryland held, Huntington v. Attrill, 70 Md. 191, that the liability imposed by section 21 of the statutes of New York upon officers of a corporation making a false certificate of its condition was for all its debts, without inquiring whether the creditor had been deceived and induced by the deception to lend his money or give credit, or whether he had incurred loss to any extent by the inability of the corporation to pay and without limiting the recovery to the amount of loss sustained and was intended as a punishment for doing any of the forbidden acts, and was therefore, in view of the decision in that State and in Maryland, a penalty which could not be enforced in the State of Maryland and that the judgment obtained in New York for this penalty while it "merged the orginal cause of action so that a suit cannot be again maintained upon it" and "is also conclusive evidence of its existence in the form and under the circumstances stated in the pleadings" yet did not change the nature of the transaction, but within a decision of the United States Supreme Court in Wisconsin v. Pelican Ins. Co., 127 U. S. 265, was in its "essential nature and real foundation" the same as the original cause of action and therefore a suit could not be maintained upon such a judgment beyond the limits of the State in which it was rendered. Upon writ of error, the Supreme Court of the United States held that the question whether due faith and credit had been denied to that judgment of the Supreme Court of New York was a Federal question and that in order to determine the question it was necessary to consider the true scope and meaning of the fundamental maxims of international law stated by Chief Justice Marshall in the fewest possible words; "The courts of no country execute the penal laws of another." The Antelope, 10 Wheat. 66-123. And the court reached the con-

clusion that in an international sense, "Penal laws strictly and properly are those imposing punishment for an offense against the State and which by the English and American Constitutions, the Executive of the State has power to pardon."

The question in decision here was not involved in that case and it is not therefore an authority on this question. The doctrine of that court, however on the question of the transitory nature of actions arising under wrongful death enactments, as evidenced by Dennick v. Railway Co., 103 U. S. 11 and cited approvingly in Huntington v. Attrill, supra, is contrary to that of the Supreme Court of this State as evidenced by Oates v. Railway Co., and Vawter v. Railway Co., supra, and McGinnis v. Mo. Car & Found. Co., 174 Mo. 235, 73 S. W. 586. The fact is, the case of Dennick v. Railway Co., 103 U. S. 11, has been twice considered by our Supreme Court and its doctrine expressly repudiated. Vawter v. Railway Co., 84 Mo. 679 and McGinnis v. Mo. Car & Foundry Co., 174 Mo. 335, 73 S. W. 586, and insofar as its doctrine is invoked in aid of Huntington v. Attrill, which, indeed, is to its fullest extent, and even extended, it can have no force in this jurisdiction. If the cases cited were more nearly in point we would consider it our duty to follow our own court, especially where we think its reasoning is sound, as we do.

After much painstaking labor, we have been unable to find any case in the books in this country or in England, sustaining the doctrine of the Marsh case, in the construction of a statute of this nature. The nearest in point is the anonymous case, Lofft's Rep. 155, cited in the Marsh case, where it was held that in an action for a penalty by the party aggrieved by bailiffs in arrest extorting unjust fees, the party can compound without leave of court. But in this case, it will be observed that the action being for extorting unjust fees, was founded upon the primary right at common law, the thing sued for was not being pursued as a penalty, and the penal

feature of the statute serving only to enhance the damages, would not render it liable to the application of the principle pertinent to a penal statute which created a new cause of action or a cause of action which had no existence at common law.

From what has been said it is obvious that the fundamental error in the Marsh case is that it treats this statute, which is both highly penal and in derogation of the common law, creating a new cause of action or transmitting to parties a right to sue on a cause of action which had no existence at common law, as on the same plane with the statutes which award increased or enhanced damages in the nature of a penalty on a common law right and applies the principle pertinent to such statutes to this extraordinary penal statute in derogation of the common law, overlooking the principle that the statutes awarding enhanced or accumulative damages are regarded as remedial and in aid of the common law, on the theory that their only purpose is to engraft additional recovery in the nature of a penalty on a common-law right of redress for a common-law wrong, and are therefore to be taken as remedial and compensatory rather than penal, and thus confounds the principle applicable to such statutes with that pertinent to a case where independent of the common law, the thing is being pursued as a penalty.

2.    It is somewhat strange to say the least, that parties having a cause of action for a fixed amount of $5,-000 under the statute, should voluntarily forego $500 of that amount and institute their suit for $4,500 instead. Such charitable conduct we regret to comment, is not in accord with the prevalent selfishness of human nature and is somewhat out of line, or in other words, does not comport with the daily practices and ministrations in the affairs of men. And just why it was done in this case cannot be determined from the record. It is suggested, however, by appellant that because of the present congested condition of the docket of the Supreme Court

which would properly have jurisdiction of this appeal, had the suit been for the full statutory penalty, suits of this nature are being instituted for lesser amounts in order to oust that court of its appellate jurisdiction and confer jurisdiction upon the two courts of appeals to the end what a more speedy determination thereof be had. Be this as it may, it is the duty of this court, in the absence of any showing to the contrary, to presume correct action, proper conduct and laudable motives on the part of all concerned in the litigation at bar. It might be said, however, that if such had been the moving cause in this or any other case, then the courts would look with a high degree of disfavor upon such practice and long hesitate before impressing the solemnity of judicial sanction upon a course of conduct that may be termed a fraud both upon the law and jurisdiction of the court. [Greene County Bank v. Teasdale Com. Co., 112 Fed. 182; Bowman v. Railway Co., 115 U. S. 614.] Courts are cautious to see that other tribunals of equal or superior jurisdiction are not thus deprived of their lawful rights to hear and determine such cases as the Constitution and the law provide should go before them for hearing and determination. [Stanley v. Railway Co., 62 Mo. 508.] It is a fundamental right of the citizen to have his case weighed, ascertained and determined in that court which the people by the Constitution, and the Legislature by solemn enactment, have denominated, and the utmost good faith should be adhered to in every instance, to the end that the judicial power of the State be not invoked or abused in aiding a violation of this primary privilege and sacred right.

For the error of the learned trial judge in peremptorily instructing the jury that in event the respondents recovered, the verdict would be for $4,500, the judgment will be reversed. But inasmuch as the petition states a cause of action under the third and fourth sections of the damage act, the cause will be remanded to be proceeded with by the circuit court thereunder. It is unnec-

essary to notice the other points in the brief. The italics in the opinion are our own.

The conclusion herein announced being in conflict with that entertained by the Kansas City Court of Appeals and announced in Marsh v. Railway Co., 104 Mo. App. 577, 78 S. W. 284, the cause will be certified to the Supreme Court in obedience to the Constitutional mandate, for final determination. *Bland, P. J.,* concurs; *Goode, J.,* dissents.